JOSEPH EICHER, Plaintiff, Petitioner, v. JOHN P. TINLEY, Judge, Respondent.

No. 43258.

JANUARY 14, 1936.

REHEARING DENIED APRIL 8, 1936.

Robertson & Robertson, for petitioner.

Tinley, Mitchell, Ross & Mitchell, for respondent and Omaha & Council Bluffs St. Ry. Co.

Robert B. Organ, County Attorney, for appellee.

DONEGAN, C. J.—This matter comes before us on an original writ of certiorari to John P. Tinley, judge of the district court of Pottawattamie county, Iowa. To a better understanding of the matters involved, a statement of the facts preceding the issuance of the writ is necessary.

It appears that from about April 20, 1935, until after the happening of the things here involved, certain organized employees of the Omaha & Council Bluffs Street Railway Company were conducting a strike against the street railway company. On August 1, 1935, the street railway company filed a petition in equity naming Joseph Eicher, the petitioner herein, and other members of the association of the street railway employees, parties defendant. This petition alleged that various acts of violence had been committed by Eicher and other members of the association against the property and present employees of the plaintiff, and asked that a temporary writ of injunction be issued enjoining said Eicher and other defendants from interfering with the operation of plaintiff's street railway system in Council Bluffs. This petition was presented to John P. Tinley, judge of the district court, and on August 1, 1935, he ordered that a temporary writ of injunction issue as prayed. Pursuant to such order, a temporary writ of injunction issued enjoining and restraining the defendant Joseph Eicher and others from interfering with the operation by plaintiff of its street railway system in Council Bluffs, Iowa, and from interfering with or injuring any of the street cars and other property of the plaintiff railway company.

The original notice of the action served upon the defendant Eicher also contained notice of the issuance of such writ, with a copy thereof. On August 20, 1935, the plaintiff street railway company filed in said action an information charging a violation of the injunction by the defendant Joseph Eicher, and thereupon a precept was issued by John P. Tinley, judge of said court, fixing the time of hearing on August 22, 1935. Said Eicher filed answer to the information, and denied each and every statement contained therein, except that said injunction had issued and had been served upon him. Hearing was had on the 22d day of August, 1935, and a judgment and order of the court, signed by John P. Tinley, judge thereof, was filed, finding the said Joseph Eicher guilty of violation of the injunction and in contempt of court, and ordering that he be confined in the

county jail of Pottawattamie county, Iowa, for 90 days, and that he pay a fine of $300, and that, in case such fine was not paid before the last day of the 90-day sentence, he be held for an additional 90 days to satisfy the payment of the fine.

On August 27, 1935, said Joseph Eicher, as petitioner, filed in this court his petition against said John P. Tinley, judge of the said district court, praying that a writ of certiorari issue directing said Tinley, as respondent, to certify to this court the record and proceedings in the matter, and alleging, as ground therefor, that, in sentencing said Eicher to be confined in the county jail for 90 days and fining him $300 and directing that, if such fine be not paid, he serve an additional 90 days in said county jail, the said respondent was acting without jurisdiction and illegally. Upon hearing before this court it was ordered that the writ issue as prayed, and that, upon the filing by petitioner of a bond of $1,000, he be released and further proceedings stayed until final determination by this court.

The record of the respondent court having been duly certified and the matters involved having been presented to us in a printed abstract of the evidence and briefs and arguments of the parties, we are now called upon to determine whether the writ should be sustained or annulled.

Petitioner states several grounds upon which he claims that the order and judgment of the trial court should be annulled. But all of these grounds, we think, may be reduced to two general propositions: (1) That the evidence before the trial court was not sufficient upon which to base a finding that the petitioner was guilty of contempt; and (2) that the trial court had no power to impose upon the petitioner any greater penalty than a $50 fine and one day in jail. The evidence is undisputed that, at the time the injunction is claimed to have been violated, the petitioner, Eicher, was present, and that bricks were thrown at and struck a street car of the street railway company, but there is a direct conflict in the evidence as to whether he took any part in what occurred. Two witnesses testified to having seen the petitioner throw a brick which hit the street car. Two other witnesses testified that they saw him in close proximity to the street car at the time and place that the attack was made. Several other witnesses, however, testified that they saw the petitioner, Eicher, during the time that the attack was being made on the

street car and that he took no part in it. In Roach v. Oliver, 215 Iowa 800, 803, 244 N. W. 899, 900, it is said:

"The case is not triable here *de novo,* yet the judgment of the lower court in contempt cases does not possess, in full measure, all the attributes of the verdict of a jury. In other words, the findings made by the respondent court are not conclusive on review, but it is for this court to say, having due regard for the findings of the lower court, whether the facts satisfactorily establish and constitute contempt. See Mason v. District Court, 209 Iowa 774, 229 N. W. 168; State ex rel. Hammond v. Hamilton, 200 Iowa 343, 204 N. W. 209; Andreano v. Utterback, 202 Iowa 570, 210 N. W. 780; St. George's Society v. Sawyer, 204 Iowa 103, 214 N. W. 877."

We have carefully read the record of the evidence introduced, and we reach the conclusion that the finding of the trial court is supported by the weight of the evidence.

The trial court sentenced the petitioner to 90 days in the county jail, fined him $300, and ordered that, on failure to pay the fine on or before the last day of the 90-day sentence, he should be held for an additional 90 days to satisfy the payment of the fine. It is contended by the petitioner that, under the statutory provisions regulating contempts and the punishment therefor, the trial court acted illegally in imposing this penalty. Section 12543 of the Code, 1931, provides that "The punishment for contempts may be by fine or imprisonment, or both, but where not otherwise specially provided, courts of record are limited to a fine of fifty dollars, and an imprisonment not exceeding one day, and all other courts are limited to a fine of ten dollars." The respondent, however, contends that a proper construction of the provisions of the Code in regard to contempts does not limit the court to a penalty fixed by this statute, but that a contempt which arises out of the violation of an injunction is controlled by section 12539 of the Code, which is found in chapter 535, covering injunctions. Section 12539 provides that, if the court finds that a contempt has been committed, it may "punish it in the usual mode"; and the respondent argues that by the words "in the usual mode" is meant, not the mode provided in section 12543, but the mode which the courts have an inherent right to exercise. Respondent further contends that, if this be not the proper construction to put upon the words "in

the usual mode'', and, if the provisions of section 12543 were meant to apply to contempts arising out of violations of injunctions, then the provisions of such section 12543 are unconstitutional. As a ground for this contention, respondent argues that the district court of this state was not created by statute, but by section 1, article V, of the Constitution, which recites that ''The Judicial power shall be vested in a Supreme Court, District Courts, and such other Courts, inferior to the Supreme Court, as the General Assembly may, from time to time, establish''; that the district court, having thus derived its existence from the Constitution, having the inherent right to punish for contempts committed against it, and being a part of the separate and co-ordinate judicial department of the state, is entirely independent of the legislative branch; and that this inherent right to punish for contempts against it, which is possessed by the district court, cannot be abridged or taken away from it by legislative enactment.

We think it must be conceded that the power to punish for contempts is an inherent right possessed by the courts, and that this right cannot be taken away from a constitutional court by the legislature. The question still remains, however, Is a statute limiting the punishment for contempt that may be inflicted by a constitutional court such an interference or abridgement of the court's inherent right that it is beyond the power of the legislature to enact? Many authorities are cited by respondent, but most of them go no further than to support the proposition that the legislature does not have the power to deprive a constitutional court of the inherent right to punish for contempt. So far as we can find from the appellant's brief and argument, the only one of these authorities which holds that a legislative body cannot place any limitation upon the punishment to be inflicted for contempt by a constitutional court is the New Hampshire case entitled In re Opinion of Justices, 86 N. H. 597, 166 A. 640.

On the other hand, we think the greater weight of authority on this proposition is that a limitation as to the punishment that may be imposed for contempt by a constitutional court is not such an interference with the inherent right of the court to punish for contempt as to prevent the enactment of such provision by the legislative branch of the state. In the case of Creasy v. Hall (Ex parte Creasy), 243 Mo. 679, 148 S. W. 914, 923, 41 L. R. A. (N. S.) 478, a statute of the state of Missouri providing

that punishment for contempt should not exceed a fine of $50 or imprisonment for more than ten days was held not to be in contravention of the power of a constitutional court, and previous decisions of the Missouri court, in which such statute had been held unconstitutional, were overruled. One of the cases thus overruled was Chicago, B. & Q. R. Co. v. Gildersleeve, 219 Mo. 170, 118 S. W. 86, 96, 16 Ann. Cas. 749. In that case there had been a dissenting opinion. In overruling the prior cases and sustaining the constitutionality of the statute in Creasy v. Hall, supra, the court said:

"In the Gildersleeve case, supra, our Brother Lamm in' an exhaustive dissenting opinion discusses this statute. I thought then, and I think now, that his opinion is unanswerable. I shall not rediscuss the question there so elegantly presented. A reference to that opinion will suffice. To my mind the sooner some of the broad doctrine of both the Shepherd [State ex inf. Crow v. Shepherd, 177 Mo. 205, 76 S. W. 79, 99 Am. St. Rep. 624] and Gildersleeve cases is overruled, the better it will be for the jurisprudence of the state. Let those cases be overruled to the extent indicated in the dissenting opinion in the Gildersleeve case, supra."

The dissenting opinion in the Gildersleeve case, which was adopted as the court's statement of the law in the Creasy case, was concurred in by three of the justices, and contains the most exhaustive discussion and citation of authorities of any authority which we have been able to find. It is impossible to quote at length from the discussion and citation of cases therein contained. We think it appropriate, however, to quote from the summation in which it is stated that,

"the following propositions lying between two extremes may be deduced as sound doctrine:

"(a) First. A constitutional court of common-law power may not be shorn of the right to punish for contempt by a statutory enactment. That power, in its essence, is ingrained in such a court, and becomes a part of its very being.

"(b) Second. Either as a matter of comity, or of right, the lawmaker may (within reason) somewhat regulate that power so that an arbitrary judicial discretion may not run riot, rampant, and wanton. And herein it must be kept in mind that

a judge on the bench is, after all, but a human being, and has frailties inseparable from humanity. Therefore, when called to punish for contempt, it not infrequently happens that he is smarting under such sense of personal humiliation, indignation, or other master emotion that at least a mote of prejudice may be assumed as in his eye.

"(c)  Third. The statute under review is a reasonable regulation, in nowise hostile to the inherent power to punish for contempt.

"(d)  That the power to regulate does not in all cases nor in this case mean the power to destroy. To regulate a court is not to destroy it."

In 13 C. J. 93, par. 141, it is stated that, "when the duration of the imprisonment or the amount of the fine is limited by statute, the punishment may conform to such limitation but cannot exceed it." A large list of cases is cited in support of the statements contained in the text, and this list has been considerably increased by the cases contained in the subsequent annotations. True, most of the citations are of cases where the statutory provision limiting the amount of penalty for contempt was followed without any discussion as to its constitutionality. In some of them, however, such as In re Garner, 179 Cal. 409, 177 P. 162, this proposition was considered, and in none of them was the limitation placed by statute upon the amount of the fine or length of imprisonment that might be imposed by the court under statutory provision held to interfere unreasonably with the inherent right of the court to punish for contempt.

Article V of our Constitution, in which appears section 1 creating the supreme and district courts, also contains sections 6 and 14. Section 6 provides that "The District Court shall be a court of law and equity, which shall be distinct and separate jurisdictions, and have jurisdiction in civil and criminal matters arising in their respective districts, *in such manner as shall be prescribed by law.*" (Italics are ours.) Section 14 provides that "It shall be the duty of the General Assembly to provide for the carrying into effect of this article, and to provide for a general system of practice in all the Courts of this State." The provision limiting punishment for contempt to a fine of $50 and imprisonment not exceeding one day first appeared in the Code of 1851 (section 1600), and has remained in our laws ever since that

time. That no successful attack has been made upon its constitutionality previous to this time would of itself seem to lend considerable support to the contention that the limitation thus placed on the court's power to punish for contempt was not such as to amount to a denial of such inherent power or an unreasonable encroachment thereon. We think that in enacting this provision the legislature did not exceed its authority, but that it was acting with due regard to article V of the Constitution, and did not exceed the authority given to it by sections 6 and 14 thereof.

In Drady v. District Court of Polk County, 126 Iowa 345, 350, 102 N. W. 115, 117, this court had under consideration the statutory provisions of our law in regard to contempts. In discussing whether these provisions were in excess of the legislative power, we said: "We may now take note of the contention of counsel for plaintiff to the effect that the statute—and giving to it force of operation as above indicated—must be held void as in excess of the power of the legislature. The argument is put upon two grounds: First, that it is an attempt to interfere with the inherent power of the courts to judge of and punish contempts; second, the legislature cannot confer power upon the courts to try one accused of a criminal constructive contempt who has purged himself by answer, as such would amount to a denial of due process of law and of the right to trial by jury, as guaranteed under the Constitution. While ready to express our appreciation of the great industry and care which mark the brief and argument of counsel, we cannot admit of soundness in the conclusion therein reached. Now, the district court is a constitutional court, and primarily it derives its authority to act from the provisions of the fundamental law of the state. That such courts have from time immemorial possessed the inherent power to punish for contempts is conceded. But while jurisdiction in all matters civil and criminal is conferred upon the court, the framers of the Constitution provided that such jurisdiction should be exercised in the manner prescribed by the co-ordinate lawmaking branch of the government. This is what was attempted by the statute in question. There is no ground upon which to plant the assertion that here was an attempt on the part of the legislature to deprive the courts of their inherent power; on the contrary, the aim was to provide regulations for the exercise thereof. This, according to the better weight of authority, it might do, and, as we think, to a certain extent it must do. This

conclusion finds support in the following cases: Arnold's Ex'x v. Com., 80 Ky. 135; State v. Morrill, 16 Ark. 384; Middlebrook v. State, 43 Conn. 257, 21 Am. Rep. 650; People v. Wilson, 64 Ill. 195, 16 Am. Rep. 528; Cheadle v. State, 110 Ind. 301, 11 N. E. 426, 59 Am. Rep. 199; Holman v. State, 105 Ind. 513, 5 N. E. 556. Our own cases give recognition tacitly to the doctrine thus stated. Dunham v. State, 6 Iowa [245], 257; State v. Folsom, 34 Iowa 583; Lutz v. Aylesworth, 66 Iowa 629, 24 N. W. 245; Jordan v. Circuit Court, 69 Iowa 177, 28 N. W. 548; Field v. Thornell, 106 Iowa 7, 75 N. W. 685, 68 Am. St. Rep. 281.''

■■■ We find nothing in the language of the chapter in regard to contempts arising out of the violations of injunctions that leads us to the conclusion that the punishment for such contempts is not subject to the limitation provided by section 12543 of the Code, and we hold that the provisions of that section are applicable to the facts of this case.

We reach the conclusion, therefore, that, while the respondent was justified, under the facts presented at the hearing before him, in imposing a punishment for contempt, he was acting illegally when he imposed on petitioner the fine of $300 and sentenced him to imprisonment for 90 days. The penalty imposed by the respondent should not have exceeded a fine of $50 and imprisonment should not have exceeded one day in jail. In so far as the order of the respondent violates the statute limiting the fine and imprisonment which he might legally impose, it should therefore be modified.

As thus modified, the order of the respondent court is affirmed, and the writ sustained.

Order modified, and writ sustained.

HAMILTON, PARSONS, KINTZINGER, and POWERS, JJ., concur.