JAMES B. CAREY et al., Petitioners, v. DISTRICT COURT OF JASPER COUNTY and HOMER A. FULLER, Judge, Respondents.

No. 44586.

718

April 4, 1939.

Rehearing Denied September 29, 1939.

John Connolly, Jr., and C. I. McNutt, for petitioners.

Luther M. Carr, County Attorney, E. O. Korf, Cross & Hamill, and Edward W. Ford, for respondents.

Miller, J.—Petitioners were adjudged in contempt of court for violating the provisions of a temporary injunction. Each was sentenced to serve six months in a county jail and pay a fine of $500. They seek review of such judgment by certiorari.

On June 15, 1938, the Maytag Company filed a petition in equity for an injunction against the United Electrical Radio & Machine Workers of America, Local Union No. 1116, and numerous individuals, alleging that said Maytag Company had a contract with said local union which expired May 1, 1938, that negotiations for a new contract so far had been unsuccessful, that the company had announced a ten per cent wage reduction, that the members of said local union, on May 9, 1938, had walked out of the company's plant on a strike, were engaged in

mass picketing, and, by show of force, intimidation, coercion, use of violent and abusive language and threats of violence and reprisals, were undertaking to obstruct and prevent entrance of employees of the company into the plant. Various specific acts of force, violence and unlawful conduct were alleged together with allegations of damage to the company. The company prayed for a temporary injunction, a permanent injunction, general equitable relief and for costs.

On June 18, 1938, petitioner Sentner served notice and filed a petition and bond for removal of the cause to the federal court, asserting that he was a citizen of Missouri, that the company was a Delaware corporation, and that the suit involved more than $3,000. The other individual defendants, who were citizens of Iowa, joined in the petition for removal.

On June 21, 1938, the company filed a resistance to the petition for removal, asserting that said Sentner was the only nonresident of Iowa among the individual defendants.

The trial court refused to recognize the petition for removal as sufficient, and on June 21, 1938, a hearing was had on the application for a temporary injunction.

The petitioners did not appear at the hearing, other than to except to the proceedings, but John Connolly, Jr., who later appeared as attorney for them before respondent and again in this court, appeared as amicus curiae. The hearing was concluded on June 22, 1938. The evidence taken at that hearing is not before us. At its close, the trial court ordered a temporary injunction, which was issued forthwith, restraining the defendants, and all persons acting in conjunction with them, from unlawfully interfering with the company's free, uninterrupted and unhindered control of its business, from congregating or loitering about the premises, picketing, accosting, obstructing or stopping anyone to intimidate, threaten or coerce them to cease to be employed by the company, from entering or going upon the premises without consent of the company, and from similar acts, except that the defendants were permitted three pickets at each point of ingress or egress of the plant, for the purpose of peaceful persuasion, acting singly and without abusive, malicious or threatening appeals.

On the same day, June 22, 1938, petitioner Sentner filed a transcript of the record in the U. S. district court. A motion to remand was sustained on June 25, 1938, the federal court

holding that the petition was clearly insufficient on its face and that there was no debatable question in the case. However, the defendants were given until July 11, 1938, to file a motion to reconsider the order of remand. Such a motion was filed and was overruled on July 16, 1938.

In the meantime, on June 23, 1938, the day after the temporary injunction was issued, members of the union seized the plant of the Maytag Company and undertook to engage in what is commonly called a "sit-down" strike.

On July 7, 1938, the company filed a petition for the issuance of precept to punish petitioners for contempt of court because they had openly and willfully aided and abetted members of the union in violating the temporary injunction. Petitioners are officers of the union, Carey being international president, Sentner international vice president, and Hall local vice president.

Petitioners filed separate answers with substantially identical allegations, denying generally the allegations of said petition, specifically denying violation of the injunction, challenging jurisdiction of the court to issue the injunction because of the petition for removal to the federal court, denying notice or knowledge of the injunction, and claiming that the proceedings constituted unconstitutional denial of due process of law.

On July 11, 1938, a petition was filed by the state, ex rel. Luther M. Carr, county attorney, against petitioners praying that a precept issue to punish them for contempt of court and asking that the trial on such petition be consolidated with that on the petition of the Maytag Company.

On the same day, July 11, 1938, precept, issued by respondent, was filed. Petitioners appeared thereto and moved to strike the petition filed by the state. The motion was overruled. Respondent then sustained the motion to consolidate the trials on the two petitions, over objections by petitioners, who then filed a motion for continuance, which respondent overruled.

The cases proceeded to trial resulting, on July 14, 1938, in the judgment above stated. Application was promptly made to this court for a writ of certiorari. The writ was issued July 19, 1938. Petitioners assert 13 assignments of error, as the basis for sustaining the writ. We will discuss such assignments in substantially the same order in which petitioners assign them.

I. The first three assignments of error assert that the

procedure herein is controlled by sections 12535 to 12539, inclusive, of the Code and, accordingly, trial could not be had at the same term of court that the precept was issued. Said sections are the last five sections of chapter 535 of the Code, dealing with injunctions. Respondent contends that its procedure was proper under the provisions of chapter 536 of the Code, dealing with contempts, and that the sections of chapter 535 of the Code upon which petitioners rely are not inconsistent with the applicability of chapter 536 to the procedure followed herein.

It will be noted that section 12535 provides that a "judge" shall issue his precept to the sheriff of the county where the violation of an injunction occurs, directing him to attach the defendant and bring him forthwith before the same or some other "judge", at a place to be stated in the precept. Section 12536 provides that the "court" may hear evidence and, if satisfied that defendant is not guilty, release him. Section 12537 provides that the "judge" may require bond for appearance at the next term. Section 12538 provides for commitment to jail in default of bond. Section 12539 provides that the "court" at the next term shall act upon the case. The use of the term "court" in sections 12536 and 12539, as distinguished from the term "judge" in section 12537, is significant.

"The distinction between a judge and a court is too familiar and too well understood to demand explanation. And a court may do things which a judge cannot do." State v. Council, 106 Iowa 731, 733, 77 N. W. 474, 475. "The power of a judge in vacation to make orders or exercise judicial functions is that only which is conferred by statute." In re Guardianship of Kimble, 127 Iowa 665, 668, 103 N. W. 1009, 1010; Whitlock v. Wade, 117 Iowa 153, 157, 90 N. W. 587. A judge in vacation cannot act as the court. Prosser v. Prosser, 64 Iowa 378, 20 N. W. 480; Laughlin v. Peckham, 66 Iowa 121, 23 N. W. 294. A judge, while sitting in one county, cannot act as the court for another county in the district. Williams v. Dean, 134 Iowa 216, 217, 111 N. W. 931, 11 L. R. A. (N. S.) 410; Baff v. Waller & Waller, 181 Iowa 1072, 1074, 165 N. W. 308.

This court has expressly recognized the fact that the statute which is now section 12535 of the Code has reference to action taken by the "judge" as distinguished from the "court". Haaren v. Mould, 144 Iowa 296, 300, 122 N. W. 921, 24 L. R. A.

(N. S.) 404. Accordingly, the precept provided for in said section 12535 may be issued by a "judge" as distinguished from the "court", and may be made returnable forthwith before the "judge", as distinguished from the "court". Under section 12536, the "court" may release the defendant but under section 12537 the "judge", if he does not release the defendant, shall hold him until the next term of "court", at which time, under section 12539, if the contempt is found, punishment shall be given in the usual mode. We have held expressly that the punishment must be in acordance with chapter 536. Eicher v. Tinley, 221 Iowa 293, 264 N. W. 591.

We think that the most that could be claimed for the provisions of section 12537 would be that it authorizes the "judge" to act as the "court" to the extent of releasing the defendant. However, section 12537 does not prohibit the "court" from trying the defendant forthwith, if the matter comes before the "court", as distinguished from the "judge".

Chapter 536 provides for punishment for contempt by the "court". Under the provisions of section 12541, subparagraph 2 provides for punishment of any "wilful disturbance calculated to interrupt the due course of its official proceedings." Subparagraph 3 provides for punishment of any "illegal resistance to any order or process made or issued by it." Obviously, these two provisions provide for punishment for contempt in the event that one undertakes to violate or aid and abet in the violation of an injunction, such as here issued by the court. Section 12546 provides that if the offender is not already in the presence of the court, he must be personally served with a rule to show cause against the punishment and a reasonable time given him therefor; or he may be brought before the court forthwith, or on a given day, by warrant, if necessary. This section obviously authorized the "court" to proceed in the manner in which it did proceed here. We are unable to construe section 12537 as inconsistent with section 12546, or limiting such latter section where the rule to show cause, such as was here issued, is issued by the "court" as distinguished from the "judge".

It would be a most unusual situation if the "court" might enter an acquittal at the same term but be required to convict at the next term. In the case of Eicher v. Tinley, supra, we state at page 297, 264 N. W. at page 593, as follows:

"We think it must be conceded that the power to punish for contempts is an inherent right possessed by the courts, and that this right cannot be taken away from a constitutional court by the legislature."

At page 299, 264 N. W. at page 594, we also cite with approval the following propositions announced by a Missouri court, to wit:

"That the power to regulate does not in all cases nor in this case mean the power to destroy. To regulate a court is not to destroy it."

It is readily conceivable that a mandatory requirement that the court must continue to the next term any prosecution for a willful interference with its proceedings or illegal resistance to its orders might, in effect, destroy its power to preserve such proceedings and to effectively enforce such orders. The legislature had no such intention.

Petitioners rely upon our holding in the case of Blunk v. Walker, Judge, 206 Iowa 1389, 222 N. W. 358. That was an instance in which a defendant was punished forthwith for violation of a temporary injunction issued in a divorce action. Our holding in that case is in no wise inconsistent with the holding here made. If any dictum therein contained would seem to be inconsistent with our present holding, such dictum is hereby overruled.

The record is undisputed that the action of respondent was taken during the term. Respondent acted as the "court". He did not act as a "judge", as distinguished from the "court". There is no merit in petitioners' first three assignments of error.

■ II. Petitioners' fifth assignment of error contends that the court was without jurisdiction to issue the temporary injunction, because there had been filed a "good and sufficient" petition for removal to the federal court, and that, upon the filing of same, the state court lost jurisdiction of the action.

Of course, if the petition for removal to the federal court was "good and sufficient", timely filed, with proper notice and bond, the trial court lost jurisdiction to the federal court. Van Horn v. Litchfield, 70 Iowa 11, 29 N. W. 783. Wisecarver & Reynard v. Ry. Co., 139 Iowa 596, 117 N. W. 961. However, both the trial court and the federal court determined that the

petition was wholly insufficient to confer jurisdiction upon the federal court. On such basis, the trial court did not lose jurisdiction and was warranted in ignoring the petitions for removal. Amory v. Amory, 95 U. S. 186, 24 L. Ed. 428.

The record shows that petitioner Sentner, who sought removal to the federal court, is a citizen of Missouri, but the other individual defendants are all residents of Iowa. It has long been the rule that a defendant, resident of the state, cannot remove a case to the federal court. In the case of Martin v. Snyder, 148 U. S. 663, 13 S. Ct. 706, 37 L. Ed. 602, involving an attempt to remove a case from the courts of Illinois, the court states:

"The petition stated 'that the controversey in said suit is between citizens of different states, and that the petitioners were at the time of the commencement of this suit and still are citizens of the state of Illinois, and that all the plaintiffs were then and still are citizens of the state of New York.'

"Under the Act of Congress of March 3, 1887 (24 Stat. at L. 552, chap. 373) it is the defendant or defendants who are nonresidents of the state in which the action is pending, who may remove the same into the circuit court of the United States for the proper district. The defendants here were not entitled to such removal, and the decree, which was in favor of the complainants and from which the defendants prosecuted this appeal, must be reversed for want of jurisdiction, with costs against the appellants, and the case remanded to the circuit court with directions to render a judgment against them for costs in that court, and to remand the case to the state court. Torrence v. Shedd, 144 U. S. 527, 533, 12 S. Ct. 726, 36 L. Ed. 528, 532."

The defendants, who were residents of Iowa and joined in Sentner's petition, had no right of removal to the federal court, under the rule above stated. Sentner alone could not remove the case, except on the theory of a separable controversy. His petition contains no such claim. Accordingly, there is definite authority for the decisions of the trial court and the federal court, to the effect that the petition for removal was wholly insufficient and, therefore, a nullity.

Petitioners cite no decisions to dispute the rule stated in Martin v. Snyder, supra. It is unnecessary for us to definitely

pass upon the question because the order of remand, made by the federal court, removed any doubt as to the jurisdiction of the trial court. Such is the effect of the decision in the case of Yankaus v. Feltenstein, 244 U. S. 127, 37 S. Ct. 567, 570, 61 L. Ed. 1036. In that case a New York court refused to recognize a petition for removal to the federal court and proceeded to final judgment. Thereafter, the federal court remanded the case. The supreme court held that the judgment of the state court was valid, stating as follows:

"For the reasons stated, the case was remanded to the city court. We think these orders, with the accompanying memoranda and opinion, taken together, show that the district court denied its jurisdiction, and remanded the cause to the city court. In this attitude of the case, the judgment of the state court must stand, as the effect of the orders of the district court was to hold the attempted removal unauthorized. This court has more than once held that such an order is not subject to review, directly or indirectly, but is final and conclusive."

Under the record herein, when the filing of the petition for removal to the federal court challenged the jurisdiction of the trial court, it held that the petition for removal was wholly insufficient to divest it of jurisdiction and ignored such petition. The federal court also held that the petition for removal was wholly insufficient to confer jurisdiction upon that court. The jurisdiction of the trial court was fully sustained. Such being the record, there is no merit in petitioners' fifth assignment of error.

III. Petitioner's fourth and twelfth assignments of error contend that they were denied the constitutional guaranty of freedom of speech and lawful assembly. Const., Art. I, §§7, 20. Because of the fact that the same constitutional guaranty is the basis for the two assignments, we consider them together.

The fourth assignment of error attacks the injunction as being a denial of freedom of speech and assembly. As above pointed out, the injunction prohibited unlawful interference with the company's business, mass picketing, intimidation and coercion and going upon the premises without the company's consent. Specific provision was made for peaceful picketing. A somewhat analogous injunction was sustained by this court in the case of Ellis v. Journeymen Barbers' Int. Union, 194

Iowa 1179, 191 N. W. 111, 32 A. L. R. 756. In that case we state at page 1183, 191 N. W. at page 113, as follows:

"The law puts no limit upon the right of defendant to exercise fair persuasion through publicity, but it cannot countenance any display that is the equivalent of force and intimidation, or of a disturbance of the peace, or of aggressive interference with the right of peaceful ingress and egress to and from the plaintiff's shop. Force *threatened* is the equivalent of force exercised, because it amounts to intimidation and duress in either event. Aggressive picketing has been quite uniformly denounced by the courts, including the United States Supreme Court."

Again at page 1191, 191 N. W. at page 116, we state:

"This is not saying that the law looks with disfavor upon trade organizations as such. It does not. But it does frown upon oppression and intimidation, and upon those abuses of power in which frail men sometimes delight, when backed by a strong organization. Trade organization has a wide and legitimate field of activity which it may lawfully exercise in favor of its membership. Within that field, it commands the full protection of the law. But tyranny through the exercise of sheer power is not one of its prerogatives. Nor may its officers exercise such a prerogative under any cover, official or otherwise. If they do so, they are amenable to the law of nuisance and of conspiracy, as other citizens are, and without any exemption therefrom because of their official cloak. It follows that the district court properly entered the injunction decree herein."

Applying the above pronouncements of this court, we hold that the injunction was not void on its face, and that the contentions made in petitioners' fourth assignment of error are without merit.

In the twelfth assignment of error, petitioners contend that the decision of respondent to the effect that petitioners are in contempt of court because they aided, abetted and assisted in violating the injunction, constitutes a violation of the guaranty of freedom of speech. Petitioners rely upon our holding in the case of Haines v. District Court, 199 Iowa 476, 202 N. W. 268; and Dunham v. State, 6 Iowa 245. These cases concern the right to comment upon the final outcome of a matter in litiga-

tion. Such a situation is far different than that presented here, where petitioners undertook to persuade, induce and assist in the violation of a temporary injunction. Such conduct did not constitute reasonable comment upon the final outcome of litigation but interference with the administration of justice. The case, therefore, falls within the rule recognized by this court in Field v. Thornell, Judge, 106 Iowa 7, 75 N. W. 685, 68 Am. St. Rep. 281, wherein we state at page 11, 75 N. W. at page 687, as follows:

"Unless the court may protect itself in the fulfillment of its important and responsible duties for the public good, it becomes impotent and contemptible. To deprive it of that power would be equivalent to ending its useful existence. If it may not repel and punish those who impede, obstruct, or embarrass the administration of law, then no litigant may rely with any assurance upon the ability of the court to insure him a fair and impartial trial."

In this case, the Maytag Company appealed to the court for the protection of its business and property. To protect that business and property, the court issued an injunction. Petitioners by counselling, aiding, abetting and assisting in the violation of such injunction were undertaking to impede, obstruct, and embarrass the administration of the law. Such conduct cannot be classified within that contemplated by the guaranty of freedom of speech. There is no merit in petitioners' twelfth assignment of error.

IV. Petitioners' sixth assignment of error contends that respondent acted illegally in overruling their motion to strike the petition of the state. The motion to strike contended that the state was not a proper party, and also that its petition sought different and distinct remedies from that asked by the plaintiff. We see no merit in such contention.

In the case of State v. Myers, 44 Iowa 580, we state at page 582, as follows:

"The Code, Sec. 3403, provides that the basis for a precept for violating an injunction is an authenticated copy of the injunction and satisfactory proof that it has been violated. This proof is usually made by affidavit."

Again in the case of Jordan v. Circuit Court, 69 Iowa 177, 179, 28 N. W. 548, 549, we state:

"The statute provides that 'unless the contempt is committed .in the immediate view and presence of the court, or comes officially to its knowledge, an affidavit showing the nature of the transaction is necessary as a basis for further action in the premises.' "

The petition of the state in paragraph 1 referred to the same injunction, upon which plaintiff's petition is based, and incorporated the same by reference to the record in the clerk's office. Paragraph 9 of said petition referred to and incorporated therein by reference the exhibits and affidavits attached to the plaintiff's petition. The prayer asked that a precept issue, that the matter be presented and tried simultaneously with plaintiff's petition and for judgment, sentence and punishment for contempt. In view of the gravity of the situation existing at Newton at the time that the state's petition was filed, we hold that the state had the right to be made a party to the proceedings. We also hold that, since the state's petition referred to the same injunction, and was based upon the same affidavits as plaintiff's petition, the state's petition did not seek different and distinct remedies from that asked by the plaintiff. There was no abuse of discretion on the part of respondent in overruling petitioners' said motion to strike.

V. Petitioners' seventh assignment of error contends that respondent exceeded its jurisdiction in overruling petitioners' motion for a continuance. The motion for continuance was based upon the claim that the petition of the state alleged new matters and sought different relief than that sought by the Maytag Company. As above pointed out, such contention was without foundation. Accordingly, respondent did not abuse its discretion in overruling the motion for continuance.

VI. Petitioners' eighth assignment of error contends that the court was without jurisdiction because the evidence taken at the hearing was not properly made of record before the entry of respondent's judgment. Examination of respondent's amended return reveals that the reporter's notes and a transcript thereof were made a part of the record before the final judgment was signed, filed or entered. There is no merit in the eighth assignment of error.

■ VII. Petitioners' tenth assignment of error contends that respondent court exceeded its jurisdiction and acted illegally because notice of the injunction was not served upon petitioners. There is no merit in such contention. Petitioners Sentner and Hall were parties to the injunction proceedings. Counsel contend that Sentner was dismissed as a defendant in such proceedings. We have not been able to find the record of such dismissal. However, be that as it may, there is evidence from which respondent found that both Hall and Sentner were in the courtroom when the order for injunction was issued. There is other evidence tending to sustain the trial court's conclusion that they had both notice and knowledge of the writ and its contents. Petitioner, Carey, was not a party to the injunction proceedings. He arrived in Newton the evening of July 5th, after the injunction had been issued. He addressed a meeting that evening. There is evidence sustaining the conclusion that, at that meeting, he stated substantially as follows: "I hereby declare the injunction is illegal and I would like to be the first one cited for contempt of court under it." Obviously, petitioner Carey should not have made any such statement without advising himself whereof he spoke. The record shows that all three petitioners must have known of the injunction and its contents. There is no merit in the tenth assignment of error.

■ VIII. Petitioners' eleventh assignment of error challenges the action of respondent in reopening the case, after he had announced his opinion, and permitting cross-examination of petitioners. This cross-examination was permitted as a preliminary step to final determination by the court of the punishment to be imposed upon petitioners. It was a matter resting within the discretion of the court. It would unduly prolong this opinion to undertake to review the circumstances then existing which prompted the action of the court. Suffice it to say we find no abuse of discretion warranting interference upon our part.

■ IX. Petitioners' ninth assignment of error contends that the evidence did not justify the court's decision in that it was not clear, satisfactory and convincing, and that the decision was based upon passion and prejudice contrary to the plain facts in the case. Of course, this case is not triable de novo in this court. After careful examination of the voluminous record

herein, we hold that the record was sufficient without question to sustain the trial court's decision.

All three petitioners testified at the trial. Each reiterated that throughout he advised the men to observe the law and to maintain order. Counsel here contend that respondent should have found that petitioners were in good faith observing the law and maintaining order. We are unable to agree with the definition of law and order, contended for by petitioners and their counsel.

As heretofore stated, the injunction prohibited unlawful interference with the business of the Maytag Company, prohibited going upon the premises without the company's consent, prohibited mass picketing, accosting, obstructing or stopping employees of the company to intimidate, threaten or coerce them to cease to work for the company. The writ provided for peaceful picketing by three members at each point of ingress and egress. The injunction was violated in its entirety. Mass picketing was indulged in in direct violation of the terms of the injunction and the plant was seized by "sit-down" strikers, who held possession of the plant against the wishes of the company.

We have heretofore pointed out that in Ellis v. Journeymen Barbers' Union, supra, this court declared mass picketing of the type here engaged in to be illegal. When petitioners aided and abetted the mass picketing here indulged in, they did not maintain law and order. They violated both.

Any doubt as to the illegality of a "sit-down" strike has been dissipated by the recent decision of the supreme court of the United States in the case of National Labor Relations Board v. Fansteel Metallurgical Corp., 306 U. S. 240, 256, 59 S. Ct. 490, 496, 83 L. Ed. 627, 635, decided February 27, 1939, wherein the court, speaking through Chief Justice Hughes, refers to such a strike with the following language:

"Here the strike was illegal in its inception and prosecution. As the Board found, it was initiated by the decision of the Union committee 'to take over and hold two of the respondent's "key" buildings'. It was pursuant to that decision that the men occupied the buildings and the work stopped. This was not the exercise of 'the right to strike' to which the Act referred. It was not a mere quitting of work and statement of

grievances in the exercise of pressure recognized as lawful. It was an illegal seizure of the buildings in order to prevent their use by the employer in a lawful manner and thus by acts of force and violence to compel the employer to submit.''

Petitioners actively aided and abetted action which was clearly unlawful. If they chose to accept a definition of ''law and order'' which we cannot recognize, they must take the consequences of such rash conduct.

The attitude of petitioner Carey as to what constitutes ''law and order'' is evidenced by the following statement attributed to him in the record, to wit: ''The question that all of us want answered is what action is in the best interests of the Maytag workers? The answer is—see that the Maytag plant does not operate until the company comes to terms.'' Sentner's attitude is evidenced by the following language: ''Injunction or no injunction, we are not going to let anyone go into that plant and take our jobs.'' The record shows that petitioner Hall made the following declaration: ''We are taking over the plant.''

It is unnecessary to extend this opinion by a review of the testimony. We have carefully considered it and reach the deliberate conclusion that there is no merit in petitioners' ninth asignment of error.

X. Petitioners' thirteenth assignment of error contends that the sentences imposed by the court were excessive. We are disposed to agree with this contention. As heretofore stated, the court sentenced each petitioner to serve six months in a county jail and to pay a fine of $500. This is the maximum permitted by the statute, as now amended. Section 1, chapter 227, Acts of the 47th General Assembly. The circumstances existing at the time final sentence was determined by the trial court were unusual, if not extreme. It would serve no useful purpose to prolong this opinion by a detailed account of such circumstances. In view of them, we have concluded that the judgment against each petitioner should be and it is modified to the extent that the jail sentence of six months shall be suspended but the fine of $500 against each petitioner shall stand. Upon default of payment of such fines, such jail sentences, not to exceed five months as to each, shall also stand, but, upon payment in full of such fines, the jail sentences, as to each petitioner, shall be removed.

With the judgment so modified, the writ is annulled.—Writ annulled.

HALE, HAMILTON, SAGER, and OLIVER, JJ., concur.

STIGER and BLISS, JJ., dissent.

STIGER, J. (dissenting)—I dissent from division one of the majority opinion. Chapter 535, 1935 Code, creates an independent statutory remedy of injunction in an action by equitable proceedings and sections 12535 to 12539, inclusive, found in said chapter, provide the proceedings that shall be followed for a violation of an injunction obtained as an independent remedy.

Section 12535 states that any judge of the supreme, district, or superior court shall, on satisfactory proof that an injunction has been violated, issue his precept to the sheriff directing him to attach the defendant and bring him forthwith before said *judge* or some other *judge*. (Italics supplied.)

Code section 12536 reads:

"12536. Contempt purged. When produced, he may file his affidavit denying or excusing the contempt, and the court may hear other evidence, oral or by affidavit, and if satisfied that the defendant is not guilty, or that the contempt is sufficiently excused, he shall be released, and all affidavits shall be filed with and preserved by the clerk."

Code section 12537 reads:

"12537. Bond required. If not so released, the judge may require him to give bond, with surety, for his appearance at the next term of the court and for his future obedience to the injunction, which shall be filed with the clerk."

Section 12538 provides that if defendant fails to give bond he may be committed to jail "until the next term of court".

Section 12539 reads:

"12539. Contempt punished. The court at the next term shall act upon the case, and, if a contempt is found to have been committed, punish it in the usual mode."

The only authority the judge before whom the defendant is brought through the execution of the precept has is to give the defendant an opportunity to purge himself of the contempt, and then determine whether the accused should be released. This

hearing is not for the purpose of determining the guilt of the accused, but whether a prima facie case is made against him. If it clearly appears to the judge that the defendant is not guilty, it is his duty to release him. If the judge is not satisfied that the defendant is not guilty, it is his duty to require him to give bond for his appearance at the next term of court.

Section 12539 provides for a hearing on the merits of the charge at the next term of court. Under the express provisions of this section, the accused cannot be punished for contempt until "the court at the next term shall act upon the case," and a contempt found to have been committed. His guilt must be established at that hearing by clear and satisfactory evidence. The course of proceedings provided by said statutes gave the accused a reasonable time to make a defense. While the power to punish for contempt is inherent in courts of record, it is equally well established that a reasonable limitation may be imposed on the court's inherent power to punish for contempt though the court may not be deprived of such power. The requirement that the case be heard at and no punishment be inflicted until the next term of court is not an unreasonable limitation on the court's inherent power to punish.

The respondent was without jurisdiction to punish the petitioner at the same term of court that the precept was issued. The precept issued in this case was under the provisions of section 12535, chapter 535.

The word "court" used in section 12536 clearly means the judge before whom the defendant is brought under the provisions of section 12535.

The majority opinion states "chapter 536 provides for punishment for contempt by a 'court' " and holds that if an accused is produced under a precept issued under the provisions of section 12535 before a *court* and not a judge he may be summarily tried and punished by the court under the provisions of chapter 536.

I cannot agree with this construction of said chapters. Chapter 535 provides that in a proceeding for violation of an injunction a precept shall issue directing that the accused be brought before a *judge* for the purpose of giving him an opportunity to purge himself. Whether or not the accused is guilty of violating the injunction cannot be determined by the *court* until the next term of court. Furthermore, chapter 536, which

enumerates certain acts and omissions constituting contempts, does not, as clearly shown by sections 12540 and 12541, provide for a trial and punishment for contempt solely by a court.

Section 12540 reads:

."12540. 'Court' defined. Any officer authorized to punish for contempt is a court within the meaning of this chapter."

Section 12541 reads in part:

"12541. Acts constituting contempt. The following acts or omissions are contempts, and are punishable as such by any of the courts of this state, or by any judicial officer, including justices of the peace, acting in the discharge of an official duty, as hereinafter provided:" etc.

Code Section 2027 provides that in case of the violation of an injunction granted under the provisions of title VI, the court, or in vacation, a judge, may summarily try and punish the offender. Section 1604 contains a similar provision for the violation of an injunction granted under the provisions of chapter 79, which relates to houses used for prostitution, gambling, or pool selling. Chapter 536, which is a general chapter on contempts, permits a punishment for contempt at the same term of court. However, the legislature clearly provided that if a person was accused of violating an injunction obtained as an independent remedy, and failed to purge himself of contempt before the judge, he must not be tried or punished until the next term of court.

The case of Blunk v. Walker, 206 Iowa 1389, 1392, 222 N. W. 358, 359, does not, as stated in the majority opinion, sustain the contentions of respondent. The original proceeding in the Blunk case was not an independent remedy of injunction but was a divorce action. A restraining order was issued against the defendant, Donald J. Blunk. He was found guilty of violating the order and summarily tried and punished at the same term of court under the provisions of chapter 536.

The court states:

"Was the respondent court acting within its jurisdiction, upon the conclusion of all the evidence, in imposing then and there the judgment in question, or should the defendant have been held 'for his appearance at the next term of court,' with opportunity to him 'to get bond with surety for his appearance?' "

The court then states on page 1393, 222 N. W. at page 359:

"In passing, it may be observed that chapter 535, Code of 1924, deals with injunctions that may be obtained as an independent remedy in an action by equitable proceedings, which relief would have been granted in equity previous to the adoption of the Code, and is referable to all cases of breach of contract or other injury where the party injured is entitled to maintain and has brought an action by ordinary proceedings. * * *. When the party is produced, he may file his affidavit denying or excusing the contempt. In other words, the defendant is given an opportunity to purge himself of the contempt. If he is not released, the judge may require him to give bond with surety for his appearance at the next term of court, and for his future obedience to the injunction; and if he fails to give such bond, he may be committed to the jail of the county where the proceedings are pending, until the next term, of court, unless he gives the bond in the meantime. It is further provided that the court at the next term shall act upon the case, and if a contempt is found to have been committed, punish it in the usual mode. Sections 12535 to 12539.

"There is no occasion to attempt to harmonize the provisions of chapters 535 and 536, Code of 1924, for the reason that the subject-matter of the two chapters is clearly differentiated. They are to be construed and both given effect according to legislative intent in their enactment. A different procedure is contemplated by said chapters, according to the nature of the case and the subject-matter of the action. We therefore hold that the respondent court acted within its proper jurisdiction in the instant case."

The court, in the Blunk case, recognized that "a different procedure is contemplated by said chapters, according to the nature of the case and the subject-matter of the action," and if the petitioner had been accused of violating an injunction obtained as an independent remedy in an action by equitable proceedings, in my opinion, the court would have sustained the writ.

I would sustain the writ.

BLISS, J., joins in this dissent.