STATE EX REL. CLARENCE S. BECK, ATTORNEY GENERAL, ET AL., APPELLEES, V. FRONTIER AIRLINES, INC., A CORPORATION, APPELLANT.

116 N. W. 2d 281

Filed July 6, 1962. No. 35234.

Marti, O'Gara, Dalton & Sheldon, for appellant.

Clarence A. H. Meyer, Attorney General, Homer G. Hamilton, and Rush C. Clarke, for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

MESSMORE, J.

The State of Nebraska ex rel. Clarence S. Beck, Attorney General, and the Department of Aeronautics of the State of Nebraska, plaintiffs, filed a petition in the district court for Cherry County, praying that a temporary injunction issue enjoining Frontier Airlines, Inc., a corporation, hereinafter referred to as the defendant, from abandoning its air transportation route between the cities of Chadron and Lincoln, Nebraska, and the intermediate cities of Valentine, Ainsworth, and Norfolk, Nebraska, and from discontinuing the intrastate transportation by air for hire over and along such route and between the several cities thereon.

The defendant is a corporation organized and existing under and by virtue of the laws of the State of Nevada, and engaged as a common carrier in the business of the

transportation by air of persons and property for hire in various states, including Nebraska.

The plaintiffs' petition contained an allegation as follows: That the public convenience and necessity require that such service be not abandoned or discontinued, but carried on and continued. The area now and heretofore served by defendant is wholly without railroad passenger service, without adequate bus service, and without other commercial surface transportation service of any kind. The cities of Ainsworth, Valentine, and Chadron and the trade areas surrounding them are isolated from the rest of the State of Nebraska, and particularly from the trade, medical, educational, and cultural centers at Lincoln and Omaha, Nebraska. The roads and highways in the area are often completely impassable during the winter months. The area is also without adequate service for the transportation of property. Defendant has been and now is providing the only commercial transportation in the area along the route above described, except for a completely inadequate bus service, and the abandonment and discontinuance by defendant of the service heretofore furnished by it over such route will cause great and irreparable harm and injury to the people of Nebraska generally and particularly to the people of the northern half of Nebraska.

The plaintiffs' petition was filed on August 29, 1960. On the same day a temporary injunction was granted as prayed for in the plaintiffs' petition.

On December 23, 1961, the Attorney General of the State of Nebraska moved the court for an order directing the issuance of a citation against the defendant to show cause why it should not be proceeded against and punished for contempt of court. In this motion for citation the plaintiffs alleged that the defendant did, on or about December 22, 1961, knowingly, willfully, contumaciously, contemptuously, and with unlawful intent openly and publicly flout, ignore, and disobey the order of the dis-

trict court as contained in the temporary injunction, refused to continue to obey it, and did abandon and discontinue all of the above described service and transportation.

The defendant made answer to the motion for citation, admitting the cessation of service, but disavowing any willful, contumacious, or contemptuous disobedience of the injunction order, and prayed that it be found not to be in contempt and that it be discharged from the citation issued therein.

On January 2, 1962, a consolidated hearing was held upon the citation for contempt and the defendant's motion for suspension of the temporary injunction. The trial court dissolved the injunction for the following reasons: The Civil Aeronautics Board rendered an order deleting segment 13, which included the route as set out in the plaintiffs' petition, from the certificate of public convenience and necessity authorizing air transportation by defendant over its intrastate system, which became effective December 19, 1961; the authority of the defendant to furnish air transportation over the route and to, from, and between the cities referred to in the petition, is regulated and determined according to the federal certification; and Chapter II, section 3.7, of the Rules and Regulations of the Nebraska State Railway Commission, does not prohibit defendant from abandoning and discontinuing all service over and upon the aforesaid route segment.

On January 2, 1962, the trial court adjudged the defendant guilty of contempt of court and ordered that the defendant pay a fine of $1,000 a day for each day, beginning on December 21, 1961, and up to but not including January 2, 1962, for violation of the injunction issued by the court on August 29, 1960.

The defendant perfected appeal to this court as provided for in section 25-1912, R. S. Supp., 1961.

The defendant assigns as error that the trial court was

without authority to impose a fine in excess of $200 against the defendant herein.

Section 25-1072, R. R. S. 1943, involved in this appeal, provides as follows: "An injunction granted by a judge may be enforced as the act of the court. Disobedience of an injunction may be punished as a contempt by the court, or by any judge who might have granted it in vacation. An attachment may be issued by the court or judge, upon being satisfied by affidavit of the breach of the injunction, against the party guilty of the same; and he may be required, in the discretion of the court or judge, to pay a fine not exceeding two hundred dollars, for the use of the county, to make immediate restitution to the party injured, and give further security to obey the injunction; or, in default thereof, he may be committed to close custody, until he shall fully comply with such requirements, or be otherwise legally discharged."

Article V, section 9, of the Constitution of this state, provides in part that the district courts shall have both chancery and common law jurisdiction, and such other jurisdiction as the Legislature may provide.

The defendant relies on Eicher v. Tinley, 221 Iowa 293, 264 N. W. 591, as the leading case supporting its position. In the cited case a petition in equity was filed by the street railway company asking that a temporary injunction be issued enjoining Eicher and other defendants from interfering with the operation of the plaintiff's street railway system in Council Bluffs. A temporary injunction was granted as prayed for by the plaintiff by a judge of the district court. A hearing was had and a judgment and order of the trial court was filed, finding Joseph Eicher guilty of violation of the injunction and in contempt of court. He was ordered to be confined in the county jail for 90 days, and ordered to pay a fine of $300, and in case such fine was not paid before the last day of the 90-day sentence, he was to be held for an additional 90 days to satisfy the payment of the fine. Eicher took his case to the Supreme Court of

Iowa, setting forth the grounds for reversal, one of which was that the trial court had no right or power to impose upon the petitioner any greater penalty than a $50 fine and 1 day in jail. The respondent contended that a proper construction of provisions of the Code in regard to contempts did not limit the court to a penalty fixed by section 12543 which provides that the punishment for contempts may be by fine or imprisonment, or both, but where not otherwise specially provided, courts of record are limited to a fine of $50, and an imprisonment not to exceed 1 day, and all other courts are limited to a fine of $10; that a contempt arising out of the violation of an injunction is controlled by section 12539 of the Code, which provides that if the court finds that a contempt has been committed it may "punish it in the usual mode"; that by the words "in the usual mode" is meant, not the mode provided in section 12543, but the mode which the courts have an inherent right to exercise; and that if the provisions of section 12543 were meant to apply to contempts arising out of violations of injunctions, then the provisions of section 12543 are unconstitutional. The court said: "As a ground for this contention, respondent argues that the district court of this state was not created by statute, but by section 1, article V, of the Constitution, which recites that 'The Judicial power shall be vested in a Supreme Court, District Courts, and such other Courts, inferior to the Supreme Court, as the General Assembly may, from time to time, establish'; that the district court, having thus derived its existence from the Constitution, having the inherent right to punish for contempts committed against it, and being a part of the separate and coordinate judicial department of the state, is entirely independent of the legislative branch; and that this inherent right to punish for contempts against it, which is possessed by the district court, cannot be abridged or taken away from it by legislative enactment." The court went on to say: "We think it must be conceded that the power to punish

for contempts is an inherent right possessed by the courts, and that this right cannot be taken away from a constitutional court by the legislature. The question still remains, however, Is a statute limiting the punishment for contempt that may be inflicted by a constitutional court such an interference or abridgement of the court's inherent right that it is beyond the power of the legislature to enact?" The court further said, quoting from Drady v. District Court of Polk County, 126 Iowa 345, 102 N. W. 115: " 'There is no ground upon which to plant the assertion that here was an attempt on the part of the legislature to deprive the courts of their inherent power; on the contrary, the aim was to provide regulations for the exercise thereof. This, according to the better weight of authority, it might do, and, as we think, to a certain extent it must do.' * * * We find nothing in the language of the chapter in regard to contempts arising out of the violations of injunctions that leads us to the conclusion that the punishment for such contempts is not subject to the limitation provided by section 12543 of the Code, and we hold that the provisions of that section are applicable to the facts of this case. We reach the conclusion, therefore, that, while the respondent was justified, under the facts presented at the hearing before him, in imposing a punishment for contempt, he was acting illegally when he imposed on petitioner the fine of $300 and sentenced him to imprisonment for 90 days. The penalty imposed by the respondent should not have exceeded a fine of $50 and imprisonment should not have exceeded one day in jail. In so far as the order of the respondent violates the statute limiting the fine and imprisonment which he might legally impose, it should therefore be modified."

The Iowa Supreme Court held: "While the general assembly has no power to wholly deprive a constitutionally created court of its inherent power to inflict punishment for acts which are in contempt of such court, yet it may constitutionally impose a reasonable limita-

tion on such courts as to the punishment which may be imposed." In other words, the Iowa Supreme Court said that the statute limiting the penalties for contempt was simply a legislative prescription of the manner in which the court's jurisdiction should be exercised, and was constitutional because it was specifically authorized by the Iowa Constitution. The Constitution of this state places no such limitation, as does the Iowa Constitution, upon the jurisdiction of the district courts of this state to punish for contempt of court for violation of an injunction.

We are not in accord with the holding in the case of Eicher v. Tinley, *supra*.

We deem the language used in Opinion of the Justices, 86 N. H. 597, 166 A. 640, applicable to the instant case. The court said: " 'It is said by Blackstone, that the process of an attachment for a contempt, must necessarily be as ancient as the laws themselves. For laws without a competent authority to secure their administration from disobedience and contempt, must be vain and nugatory. A power, therefore, in the supreme courts of justice to suppress such attempts, by an immediate attachment of the offender, results from the first principles of judicial establishments, and must be an inseparable attendant upon every judicial tribunal.' Tenney's Case, 23 N. H. 162, 166.

" 'The authority to punish contempt is a necessary incident, inherent in the very organization of all legislative bodies, and of all courts of law or equity, independent of statute provisions.' State v. Matthews, 37 N. H. 450, 453. To the same effect is Bates's Case, 55 N. H. 325.

"The constitution confers upon the legislature 'full power and authority to erect and constitute judicatories and courts.' Const. Pt. II, art. 4. The question now presented is whether this grant of power is broad enough to authorize the legislature to take from the judicial department of the government a power which has always, both here and elsewhere, been recognized as an

essential attribute of judicial tribunals. We are of opinion that it does not confer such power. The existence of the judiciary as one of the three essential parts of government is declared in terms. It is 'to be kept as separate from, and independent of' the legislature 'as the nature of a free government will admit.' Const. Pt. I, art. 37. If one of the essential attributes might be taken away from the judiciary, so might many or all of them; and our courts might be directed to proceed in accordance with regulations at variance with all known ideas of the functions of a court. The constitution creates no such supremacy of the legislative department over the judicial. * * *

"As before pointed out, it is the law in this state that the power to punish for contempt is an essential attribute of a court of general jurisdiction. It may not be entirely clear whether the legislature can regulate the exercise of this power, beyond the limit of reasonable sentence of the offender, which is implicit in existing law. If there is such power, it is manifest that it does not extend to fixing a limit which in many cases would not provide for more than a nominal sentence. Such is the proposal in this bill. While this feature of it preserves the form of power, it takes away the substance thereof. It is our opinion that authority to enact such a limitation has not been conferred upon the legislature."

In the above case the court was considering a legislative bill, and stated: "A provision, however, proposing to limit all punishment for indirect contempt to a specific fine of one hundred dollars and imprisonment not to exceed fifteen days would be an unconstitutional attempt to infringe upon an essential attribute of the judicial department. * * * The separation of powers effected by the constitution in the creation of the three departments of government is a vital limitation upon powers and not merely a convenient and variable assignment of duties."

In Eicher v. Tinley, *supra*, the court in analyzing the

above-cited case stated that it holds that a legislative body cannot place any limitation upon the punishment to be inflicted for contempt by a constitutional court.

In considering the language in Opinion of the Justices, *supra*, we conclude that it does hold in effect that the legislative body cannot limit or interfere in the punishment of contempt by a constitutional court such as the district courts of this state, because of the inherent power vested in the district courts to punish for contempt.

The rule applicable in this state is that the power to punish for contempt of court is a power inherent in all courts of general jurisdiction, such as the district courts of this state, independent of any special or express grant of statute. See 12 Am. Jur., Contempt, § 40, p. 418. We adhere to this principle.

In the instant case the defendant raises no question as to the reasonableness of the fine, but bases its contention squarely upon the proposition that the Legislature may limit the punishment for contempt of an injunction as provided for by section 25-1072, R. R. S. 1943.

There is no bill of exceptions in this case, therefore we are unable to discern any factual situation that may have warranted the trial court in finding differently than it did. As heretofore stated, the contention of the defendant is that the fine in any event should not exceed $200.

As stated in 17 C. J. S., Contempt, § 100, p. 144: "* * * if a series of acts constitutes but one contempt, or the same contempt is permitted to continue for several days, there cannot be separate punishment for each successive act or day." Applying the above to the instant case, the fine of $12,000 assessed against the defendant is but one fine.

We conclude that section 25-1072, R. R. S. 1943, is an invalid statutory enactment and is unenforceable in the instant case.

We further conclude that the judgment of the trial court should be affirmed.

AFFIRMED.