May 19, ⎱
  1933. ⎰

## OPINION OF THE JUSTICES.

ON April 13, 1933, the following resolution was adopted by the house of representatives:

"*Resolved*, That the Speaker of the House be and hereby is directed to obtain from the Honorable Judges of the Supreme Court their opinions upon the following question:

Do the provisions of House Bill No. 148, a copy of which is annexed hereto and made a part of this resolution, violate any of the provisions of our State Constitution?"

The following answer was returned:

*To the House of Representatives:*

The justices of the supreme court make the following answer to the inquiry contained in your resolution of April 13, concerning the constitutionality of House Bill number 148.

The bill may be divided into three general parts. I. It denies to employers the right to contract with their employees relative to membership by the latter in labor unions. II. It denies to employers certain equitable relief, available to others. III. It denies to all courts the power to punish for contempt in certain cases, unless the

accused be given the option of a trial by jury; and it limits the power to commit to a fifteen day sentence.

I. The federal supreme court has decided that the limitation which the bill contains upon the right to make contracts is invalid, if enacted by the congress, because of the guaranty of liberty and property contained in the fifth amendment to the constitution of the United States. *Adair* v. *United States*, 208 U. S. 161. The same court has decided that a like provision in a state statute is also invalid because of the provisions of the fourteenth amendment to that constitution. *Coppage* v. *Kansas*, 236 U. S. 1. It is therefore immaterial whether it also violates our state constitution. In any event, such legislation as the bill proposes would be invalid.

It is true that these decisions have been the subject of adverse comment; but the arguments thus advanced were fully and ably presented to the court and received careful consideration in the opinions rendered. It is useless to argue here that the decisions are wrong. They are the supreme law of the land, to which we are required to yield obedience.

Whether the proposed limitations upon the free right to make contracts should be deemed invalid for the further reason that it would violate the provisions of the state constitution, is a question which would demand extensive research and consideration before an adequate answer could be returned. The time is short within which a reply to your inquiry must be made, if it is to be of any service to you. In view of these considerations, we respectfully request that we be excused from expressing an opinion as to whether these limitations would also be contrary to the provisions of the constitution of this state.

II. The state constitution provides that legal remedies shall be available to every one. "The law cannot discriminate in favor of one citizen to the detriment of another. The principle of equality pervades the entire constitution. The bill of rights declares expressly that all government is 'instituted for the general good, for the common benefit, protection, and security of the whole community, and not for the private interest or emolument of any one man, family, or class of men;' that 'every member of the community has a right to be protected by it in the enjoyment of his life, liberty, and property. ... is therefore bound to contribute his share in the expense of such protection', and is 'entitled to a certain remedy by having recourse to the laws for all injuries he may receive in his person, property, or character.' Bill of Rights, Arts. 1, 10, 12, 14. All the declarations

of right are imbued with the same spirit. With them the body of the constitution is in full conformity. To secure to all as perfect equality of privilege and of burden as human wisdom permits, was the chief end sought by the framers of the instrument. To this all other purposes were incidental and subordinate." *State* v. *Pennoyer*, 65 N. H. 113, 114.

The same thought was reiterated in an unreported opinion[1] of Chief Justice *Doe*, written shortly before his death, and frequently quoted and approved by the court. See *Williams* v. *State*, 81 N. H. 341, 352. He said in part: "Uniformity and equality of rights are necessary for the safety of every citizen. It would be comparatively easy to invade the rights of a feeble person, a feeble party, or a feeble sect, if uniformity and equality were not an element of law in the legal sense. . . . There is no limit to the injustice and tyranny that can be practiced if uniformity and equality are not essential parts of law. Any man may have the misfortune to entertain unpopular opinions on a variety of subjects. Any family or neighborhood, for a great variety of reasons, may encounter hostility in public opinion. . . . If the power of discrimination can be exercised by special laws, no one knows how soon he and his neighbors may become the victims. Without equality nothing is secure. The settled constitutional right of equal privileges and equal protection under general law rests on incontestable grounds of wisdom and necessity. The equal protection of the laws recently inserted in the federal constitution has been a New Hampshire doctrine 110 years; and it has been maintained here in a breadth of meaning and a scope of practical operation unknown elsewhere." 191 Briefs & Cases 181.

Judged by the standard thus set, it is our opinion that an act denying to employers of labor any part of the full right accorded to others to resort to the courts for relief would be unconstitutional. Such is the purport of many of the provisions contained in sections three to nine of the proposed bill, and to this extent it would not become a valid law if enacted.

For like reasons the federal supreme court has held similar provisions in a state statute to be invalid under the federal constitution. *Truax* v. *Corrigan*, 257 U. S. 312.

It may be added that many of the activities described in section 3 and commonly employed in the conduct of a strike are such that no court would enjoin them, except in a case where the strike itself was illegal, either in its inception or in its execution. But if, for example, the strike were instituted or carried on in the execution of a conspiracy

[1] See *post* p. 609.

to injure the employer, all means for its furtherance might be enjoined. The bill makes no such distinction.

III. The third division of the bill relates to punishment for indirect contempt. There has been some doubt in our minds whether these provisions, like those preceding them, relate solely to contempts growing out of labor disputes, or whether they are designed to govern in all cases of indirect contempt. If the former is the purpose of the bill, and the provisions are limited as suggested, then they are invalid for the reasons set forth in the second division of this opinion.

If, however, the purpose is to make the provisions of general application, it would be advisable so to state in terms. In that event other considerations would be involved.

Paragraphs (a) and (b) of section 10, providing for bail as in criminal cases and for notice and opportunity to make defence, are unobjectionable in any event. They merely enact as a statute what is believed to have been the uniform practice in this state in the absence of legislative direction.

The provision of paragraph (c) of that section that the party accused of contempt shall be entitled to a jury trial presents issues which we feel cannot be adequately investigated in the limited time now available, and we therefore request to be excused from expressing any views in relation thereto.

The provision in paragraph (d) for a change of venue when the alleged contempt consists of an attack upon the character or conduct of the judge issuing the restraining order, which attack is not made in open court, would be valid if it went no further than to provide for a hearing before another judge upon the issue of prejudice. But the proposal of the bill goes beyond that. It in substance makes the fact that the offense to be tried is an attack upon the character or conduct of the judge conclusive evidence of disqualification. He is to be deemed disqualified if the defendant so elects.

That such a provision might be deemed to be a reasonable one, is hardly open to question. It in no way undertakes to limit the power of the court to act in the matter of contempt; nor is it a limitation of jurisdiction. It relates solely to the disqualification of a particular judge to act in a specified case. The authority of the court to act is not diminished in any way. Statutory disqualifications of particular judges or jurors have frequently been enacted, and uniformly treated as valid. The subject is extensively reviewed in *State* v. *Sawtelle*, 66 N. H. 488. It is our opinion that this provision would not be unconstitutional.

Section eleven provides that punishment for indirect contempt shall not exceed a fine of one hundred dollars and imprisonment for fifteen days. "It is said by *Blackstone*, that the process of an attachment for a contempt, must necessarily be as ancient as the laws themselves. For laws without a competent authority to secure their administration from disobedience and contempt, must be vain and nugatory. A power, therefore, in the supreme courts of justice to suppress such attempts, by an immediate attachment of the offender, results from the first principles of judicial establishments, and must be an inseparable attendant upon every judicial tribunal." *Tenney's Case*, 23 N. H. 162, 166.

"The authority to punish contempt is a necessary incident, inherent in the very organization of all legislative bodies, and of all courts of law or equity, independent of statute provisions." *State v. Matthews*, 37 N. H. 450, 453. To the same effect is *Bates's Case*, 55 N. H. 325.

The constitution confers upon the legislature "full power and authority to erect and constitute judicatories and courts." Const. Pt. II, *art.* 4. The question now presented is whether this grant of power is broad enough to authorize the legislature to take from the judicial department of the government a power which has always, both here and elsewhere, been recognized as an essential attribute of judicial tribunals. We are of opinion that it does not confer such power. The existence of the judiciary as one of the three essential parts of government is declared in terms. It is "to be kept as separate from, and independent of" the legislature "as the nature of a free government will admit." Const. Pt. I, *art.* 37. If one of the essential attributes might be taken away from the judiciary, so might many or all of them; and our courts might be directed to proceed in accordance with regulations at variance with all known ideas of the functions of a court. The constitution creates no such supremacy of the legislative department over the judicial.

Your predecessors of two years ago were advised that they were not empowered to impose upon the probate court duties that were strictly executive. *Opinion of the Justices*, 85 N. H. 562. The reason assigned for that conclusion was the before quoted provision for the separation of the three departments of government.

While the power to establish "judicatories and courts" was conferred upon the legislature, "No particular definition of judicial powers is given in the constitution; and considering the general nature of the instrument, none was to be expected. ... But 'powers

judicial', 'judiciary powers', and 'judicatories' are all phrases used in the constitution: and though not particularly defined, are still so used to designate with clearness, that department of government, which it was intended should interpret and administer the laws." *Merrill* v. *Sherburne*, 1 N. H. 199, 203.

That it was made the constitutional duty of the legislature to set up a judicial system no one would deny. To perform that duty, the system established must have all the essential elements called for by well known and universally recognized principles. To set up a system which lacked any of those requisites would be to fail in the performance of the duty imposed by the constitution. And as such lack could not be created by the original institution of a judicial system, it follows as a matter of course that a similar result cannot be reached by taking an essential attribute from an existing system.

As before pointed out, it is the law in this state that the power to punish for contempt is an essential attribute of a court of general jurisdiction. It may not be entirely clear whether the legislature can regulate the exercise of this power, beyond the limit of reasonable sentence of the offender, which is implicit in existing law. If there is such power, it is manifest that it does not extend to fixing a limit which in many cases would not provide for more than a nominal sentence. Such is the proposal in this bill. While this feature of it preserves the form of power, it takes away the substance thereof. It is our opinion that authority to enact such a limitation has not been conferred upon the legislature.

In general support of the bill it is urged that the constitutional separation of the three departments of government should not be regarded as a vital limitation upon powers, but rather as a convenient and variable assignment of duties. The contrary view, entertained by the founders of our government, was stated and approved in the before mentioned opinion rendered two years ago. "... recognition of the separation of the three departments as a vital and underlying principle in our form and structure of government has been uniformly and consistently given, and the force of the principle remains to-day unimpaired." *Opinion of the Justices*, 85 N. H. 562, 569. We still entertain that view. If the people desire a change from the present government of limited powers and defined departments, the result is to be accomplished only "in a convention of the people engaged in arranging the terms of the social compact and settling the fundamentals of government." *Thompson* v. *Kidder*, 74 N. H. 89, 93.

The conclusion reached herein as to each of the three general features of the bill is in accord with the views recently expressed by the justices of the supreme judicial court of Massachusetts, in answer to a legislative inquiry concerning the constitutionality of a similar bill. *Opinion of the Justices*, 275 Mass. 580.

Whether there may be other reasons for concluding that any of the general objects of the bill are outside the sphere of constitutional legislation, and whether there may be other details which are without constitutional warrant, are matters upon which no opinion is expressed. We believe that the foregoing will afford to you sufficient guidance in the consideration of this bill in its principal constitutional aspects.

ROBERT J. PEASLEE.
JOHN E. ALLEN.
THOMAS L. MARBLE.
OLIVER W. BRANCH.
PETER WOODBURY.

May 19, 1933.