Original,
No. 6291.

*In re* Mack M. Mussman.

March 31, 1972.

*Warren B. Rudman,* attorney general, and *W. Michael Dunn,* assistant attorney general, by brief, for the petitioner.

*Devine, Millimet, McDonough, Stahl & Branch* and *Joseph A. Millimet* and *Silas Little III,* by brief, for the defendant, Mack M. Mussman.

Kenison, C.J. The questions presented in this case are whether the supreme court has any jurisdiction to inquire into the judicial conduct of a district court judge, and if

so, whether it may exercise judicial power short of removal from office. The answers to these questions are made more difficult because the historical precedents are not clear and the authorities are divided. Braithwaite, Who Judges the Judges?, A Study of Procedures from Removal and Retirement chs. 1, 11 (1971); *see Chandler v. Judicial Council of Tenth Circuit*, 398 U.S. 74, 26 L. Ed. 2d 100, 90 S.Ct., 1648 (1970).

The present proceeding originated when the attorney general filed in this court a petition for "Inquiry Into The Judicial Conduct Of Mack M. Mussman, Justice of the Littleton District Court." The defendant filed a motion to dismiss the petition on the grounds that the Supreme Court of New Hampshire has no jurisdiction by statute, or under common law, or under the State constitution to conduct the requested inquiry, nor to take any action in relation thereto. The defendant maintains that the exclusive jurisdiction as to both inquiry and action is limited to impeachment or address as provided in articles 38 and 73 of part II of the New Hampshire constitution. The defendant's motion to dismiss was transferred to this court without ruling by *Amos N. Blandin, Jr.,* Judicial Referee, to whom the petition had originally been referred.

Candor compels the recognition, at the very outset, that the judiciary has no power of impeachment. This is exclusively a legislative prerogative. N.H. CONST. pt. II, arts. 38, 39. The fact that the chief justice of the supreme court presides when the impeachment of a governor is involved in no way changes this from a legislative to a judicial proceeding. N.H. CONST. pt. II, art. 40. The power of the Governor and Council to remove a state officer "for reasonable cause upon the address of both houses of the legislature" is an executive and legislative proceeding. N.H. CONST. pt. II, art. 73. The judiciary has not been granted the removal power by this method, either by the constitution or the common law. Upton, The Independence of the Judiciary in New Hampshire, 1 N.H.B.J. (No. 4), 28, 37 (1959).

It has been assumed in many cases, without much argument or consideration, that the powers of impeachment and address were completely exclusive and precluded any type of inquiry or corrective action by the judiciary. *Attorney General*

v. *Tufts,* 239 Mass. 458, 478 (para. 1), 131 N.E. 573, 574 (1921). It is significant that this assumption does not persist in more recent cases. *In re DeSaulnier,* 274 N.E.2d 454; 276 N.E.2d 278 (Mass. 1971). For historical reasons the assumption is rejected in this State. *Ricker's Petition,* 66 N.H. 207, 29 A. 559 (1890); *Boody* v. *Watson,* 64 N.H. 162, 9 A. 794 (1886).

Although not central to a decision in this case, the power of the supreme court to exercise general superintendence of courts in this State system is clearly relevant. RSA 490:4(supp.), Laws 1971, 341:1, reads as follows: "Jurisdiction. The supreme court shall have general superintendence of all courts of inferior jurisdiction to prevent and correct errors and abuses, including the authority to approve rules of court and prescribe and administer canons of ethics with respect to such courts, shall have exclusive authority to issue writs of error, and may issue writs of certiorari, prohibition, habeas corpus, and all other writs and processes to other courts, to corporations and to individuals, and shall do and perform all the duties reasonably requisite and necessary to be done by a court of final jurisdiction of questions of law and general superintendence of inferior courts." This statute is a venerable one and has generally been recognized as confirming the common-law powers of this court from its beginning. Page, Judicial Beginnings in New Hampshire 1640-1700, at 43 (1959). In other words the inherent superintending power of the court has been supported by consistent custom, is confirmed by statute, RSA 490:4(supp.), Laws 1971, 341:1, and enforced by judicial decisions. Note, Doe of New Hampshire: Reflections on a Nineteenth Century Judge, 63 Harv. L. Rev. 513, 514-16 (1950); *Harrington's Case,* 100 N.H. 243, 123 A.2d 396 (1956); *Ricker's Petition,* 66 N.H. 207, 29 A. 559 (1890); *Mussman's Case,* 111 N.H. 402, 286 A.2d 614 (1971).

The authority of a supreme court to take disciplinary action short of removal from office under its general power of superintendence has been recognized elsewhere. In *Ransford* v. *Graham,* 374 Mich. 104, 108, 131 N.W.2d 201, 203 (1964), the court acknowledged that it could not remove a judge from office and could not terminate his salary. However it

held that it did have authority to enjoin or suspend his activities as a judge "for the purpose of protecting the purity of judicial processes and maintaining public confidence in the administration of justice." *See also* Reporter's note to *In re Graham,* 366 Mich. 268, at 280-81 (1962). The constitutional provision vesting in the Supreme Court of Michigan, the "general superintending control over all inferior courts," is similar to RSA 490:4(supp.), Laws 1971, 341:1. Other courts have taken corrective measures of a restricted nature. *See In re Judges of Cedar Rapids Municipal Court,* 256 Iowa 1135, 130 N.W.2d 553 (1964); *Jenkins* v. *Oregon State Bar,* 241 Ore. 283, 405 P.2d 525 (1965).

Our rejection of defendant's contention and of the holding of some courts that constitutional and legislative proceedings for removal by impeachment or address are exclusive remedies for judicial abuse is not a mere *ipse dixit.* In the last four or five decades historical and scholarly legal commentators have demonstrated that constitutional provisions for legislative removal proceedings do not preclude lesser alternative judicial remedies and disciplinary action. Shartel, Federal Judges — Appointment, Supervision, and Removal — Some Possibilities under the Constitution, 28 Mich. L. Rev. 870, 905-09 (1930); Comment, Judicial Removal Machinery: S. 1506, 118 U. Pa. L. Rev. 1064, 1068-69 (1970); Berger, Impeachment of Judges and "Good Behavior" Tenure, 79 Yale L. J. 1475, 1487-507 (1970); Staff of Subcommittee on Improvements in Judicial Machinery of the Senate Committee on the Judiciary, 91st Cong. 1st Sess., Memorandum: The Constitutionality of a Statutory Alternative to Impeachment, 115 Cong. Rec. 14912 (1969); *see Cusack* v. *Howlett,* 44 Ill. 2d 233, 254 N.E.2d 506 (1969); 84 Harv. L. Rev. 1002-12 (1971).

The constitution of this State provides in emphatic terms that "(i)t is the right of every citizen to be tried by judges as impartial as the lot of humanity will admit," and therefore judges "should hold their offices so long as they behave well." N.H. CONST. pt. I, art. 35. If the judiciary had no means by which this constitutional provision could be implemented in practice as well as theory, the average citizen would wonder whether he was receiving the type of impartial justice that

the constitution requires. The necessity for some type of judicial control less than removal from office becomes clearly apparent. It has never been the tradition of the jurisprudence of this court to refuse to exercise judicial power when there was an established need for it and there was no constitutional barrier to its exercise. *See Attorney General* v. *Taggart,* 66 N.H. 362, 29 A. 1027 (1890); Dowling, Executive Disability, 1 N.H.B.J. (No. 2) 14 (1959); Reid, Chief Justice, The Judicial World of Charles Doe (1967).

In the present case, the petition for inquiry into the judicial conduct of the judge has not been heard and we have only allegations in support of the petition. The fact that the judge of the Littleton District Court is under suspension as an attorney might be used as a basis for some supervisory action by this court. *Hobbs' Case,* 75 N.H. 285, 73 A. 303 (1909); *Mussman's Case,* 111 N.H. 402, 286 A.2d 614 (1971); *Matter of Ruby,* 328 Mass. 542, 105 N.E.2d 234 (1952); *In re DeSaulnier,* 274 N.E.2d 454; 276 N.E.2d 278 (Mass. 1971). However in the interest of a fair hearing it is deemed advisable to take no action at this juncture. We conclude that this court has the power, upon a proper showing of abuse or misconduct, to order a suspension of a judge from sitting in his court or to assign some other judge in his place. The defendant's motion to dismiss is denied and the case is set down for hearing of the charges made and a report of findings to this court.

*Defendant's motion to dismiss denied.*

All concurred.