Request of the House of Representatives
No. 95-162

OPINION OF THE JUSTICES

(Judicial Salary Suspension)

October 18, 1995

The following Resolution No. 14, as amended, requesting an opinion of the justices, was adopted by the House of Representatives on March 9, 1995, and filed with the supreme court on March 13, 1995:

"Whereas, there is pending in the house, HB 586-FN, 'An Act suspending the salary and benefits of any judge suspended by the supreme court for misconduct;' and

"Whereas, RSA 490:18-b as proposed by HB 586-FN would require the supreme court to suspend the salary and benefits of any judge who is suspended by the supreme court for misconduct for the period of the suspension; and

"Whereas, an amendment has been proposed to HB 586-FN; and

"Whereas, a question has arisen as to the constitutionality of the provisions of the bill as amended; and

"Whereas, it is important that the question of the constitutionality of said provisions be settled in advance of its enactment; now, therefore, be it

"Resolved by the House of Representative[s]:

"That the justices of the supreme court be respectfully requested to give their opinion on the following questions of law:

1. Would enactment of HB 586-FN, as amended, constitute a violation of the separation of powers provisions of Part I, Article 37 of the New Hampshire Constitution?

2. Would enactment of HB 586-FN, as amended, violate the provisions of Part I, Article 35 of the New Hampshire Constitution, which provides for tenure of supreme court justices?

3. Would enactment of HB 586-FN, as amended, violate the provisions of Part II, Article 59 of the New Hampshire Constitution, relative to the establishment of permanent salaries for justices of the superior court?

4. Would enactment of HB 586-FN, as amended, violate the provisions of Part II, Article 73 of the New Hampshire Constitution, which establishes the tenure of judges as commissioned officers?

5. Would enactment of HB 586-FN, as amended, violate any other provision of the New Hampshire Constitution?

That the clerk of the house of representatives transmit copies of this resolution and HB 586-FN and the proposed amendment to the justices of the supreme court."

The following response is respectfully returned:

*To the Honorable House of Representatives:*

The undersigned justices of the supreme court now submit the following reply to your opinion request of March 9, 1995. Following our receipt of your resolution, we invited interested parties to file memoranda with the court on or before April 17, 1995. We note that the issues raised by the proposed statute present us with the first formal opportunity we have had to consider whether this court, in the context of a judge's suspension for disciplinary reasons, may also suspend his or her salary and benefits.

HB 586-FN (the bill), as amended, proposes to amend RSA chapter 490 (1983) by inserting after section 18-a a new section to read:

> 490:18-b Suspension of Salary and Benefits. The supreme court shall suspend the salary and benefits of any judge who is suspended by the supreme court for misconduct for the period of suspension. The period of suspension shall not be

counted as accumulated time for the purposes of retirement compensation.

■ Your first question asks whether enactment of the bill would "constitute a violation of the separation of powers provisions of Part I, Article 37 of the New Hampshire Constitution." We answer in the affirmative.

In *In re Mussman*, 112 N.H. 99, 289 A.2d 403 (1972), this court affirmed its inherent authority to oversee the operations of the judicial branch for the purposes of maintaining public confidence in the administration of justice and held that we may suspend the judicial duties of judges who have engaged in misconduct.

> The constitution of this State provides in emphatic terms that "[i]t is the right of every citizen to be tried by judges as impartial as the lot of humanity will admit," and therefore judges "should hold their offices so long as they behave well." N.H. CONST. pt. I, art. 35. If the judiciary had no means by which this constitutional provision could be implemented in practice as well as theory, the average citizen would wonder whether he was receiving the type of impartial justice that the constitution requires. The necessity for some type of judicial control less than removal from office is clearly apparent. It has never been the tradition of the jurisprudence of this court to refuse to exercise judicial power when there was an established need for it and there was no constitutional barrier to its exercise.

*Id.* at 102–03, 289 A.2d at 405–06.

■ Subsequent to our decision in *Mussman*, the voters approved part II, article 73-a of the State Constitution, which provides:

> The chief justice of the supreme court shall be the administrative head of all the courts. He shall, with the concurrence of a majority of the supreme court justices, make rules governing the administration of all courts in the state and the practice and procedure to be followed in all such courts. The rules so promulgated shall have the force and effect of law.

This provision has been recognized as vesting discipline of the legal profession in the supreme court. *See Petition of Grimm*, 138 N.H. 42, 51, 635 A.2d 456, 462 (1993). In addition, we observed in *Mussman* that RSA 490:4 (1983) "has generally been recognized as confirming the common-law powers of this court from its begin-

ning." *Mussman*, 112 N.H. at 101, 289 A.2d at 405. RSA 490:4 provides:

> The supreme court shall have general superintendence of all courts of inferior jurisdiction to prevent and correct errors and abuses, including the authority to approve rules of court and prescribe and administer canons of ethics with respect to such courts, shall have exclusive authority to issue writs of error, and may issue writs of certiorari, prohibition, habeas corpus, and all other writs and processes to other courts, to corporations and to individuals, and shall do and perform all the duties reasonably requisite and necessary to be done by a court of final jurisdiction of questions of law and general superintendence of inferior courts.

The superintending control of the supreme court is comprehensive. *State ex rel. Brown v. Knowlton*, 102 N.H. 221, 223, 152 A.2d 624, 625 (1959). Accordingly, this court has the responsibility to protect and preserve the judicial system. We have the inherent authority to take whatever action is necessary to effectuate this responsibility.

These same sources—common law, constitutional authority, supervisory powers recognized in this court by statute, the power of this court to maintain and impose discipline with respect to the conduct of all members of the bar, and the power of this court to establish and enforce rules of court—give us the authority and duty as a matter of judicial discretion to suspend the salary of a judge who has been suspended by this court for abuse or misconduct. *Accord Matter of Grubb*, 417 S.E.2d 919, 922 (W. Va. 1992); *Matter of Ferguson*, 403 S.E.2d 628, 630 (S.C. 1991); *Matter of Benoit*, 487 A.2d 1158, 1172-73 (Me. 1985); *Matter of Brennan*, 483 N.E.2d 484, 484 (N.Y. 1985); *Matter of Del Rio*, 256 N.W.2d 727, 736 (Mich. 1977), *appeal dismissed*, 434 U.S. 1029 (1978).

The separation of powers doctrine set forth in part I, article 37 of the State Constitution compels limits to encroachments by one branch of government into the inherent and internal affairs of another branch. *See State v. LaFrance*, 124 N.H. 171, 176, 471 A.2d 340, 342 (1983). "The power to regulate officers of the court is a power inherent in the judicial branch." *Smith v. State*, 118 N.H. 764, 770, 394 A.2d 834, 839 (1978). The bill mandates that this court suspend the salary and benefits of every judge suspended for misconduct. This mandatory feature intrudes unduly upon our superintendence power under part II, article 73-a, which includes the authority to exercise discretion in determining whether to

suspend a judge without pay. As such, it impermissibly encroaches upon an exclusive judicial function in violation of the separation of powers mandate of part I, article 37.

Your second, third, and fourth questions concern whether suspending the pay of a judge violates those provisions of our State Constitution providing for tenure and permanent salaries for judges. In our view, there is no "constitutional barrier," *Mussman*, 112 N.H. at 103, 289 A.2d at 406, to the exercise by this court of such judicial power. As we noted in *Mussman*, the suspension of a judge is a disciplinary action short of removal. *Id.* at 101, 289 A.2d at 405. A suspended judge is not removed from office, but rather is prevented for a certain time from performing the functions of the office. *See McDowell v. Burnett*, 75 S.E. 873, 878 (S.C. 1912) (suspension is the mere temporary withdrawal of the power to exercise the duties of an office; removal is a complete and final deprivation of official tenure). The temporary suspension of a judge, therefore, does not conflict with the constitutional provisions concerning tenure of commissioned officers and judges. *See* N.H. CONST. pt. I, art. 35, pt. II, art. 73.

The rationale behind our constitutional provisions establishing tenure for judges during good behavior and permanent salaries was to ensure the independence of the judiciary. *See Mussman*, 112 N.H. at 102–03, 289 A.2d at 405–06. As explained in Atkinson, *An Address of the Convention for Forming a Constitution of Government for the State of New Hampshire 1781*:

> The Judges all hold their offices during good behavior; the only proper tenure, especially for the Judges of the Supreme Court of Judicature, as they ought, in a peculiar manner, to feel themselves independent and free, and as none would be at the pains to qualify themselves for such important places, if they were liable to be removed at pleasure. As another inducement for persons so to qualify themselves, as an encouragement to vigilance, and an antidote to bribery and corruption, adequate, honorable, and permanent salaries to the Judges of the Supreme Court in a particular manner, we have made essential in the Constitution, and do now most strongly recommend.

J. COLBY, MANUAL OF THE CONSTITUTION OF THE STATE OF NEW HAMPSHIRE 107 (1902). This State's constitutional provisions are not intended, however, to preclude the imposition of disciplinary sanctions pursuant to this court's duty to regulate the judiciary. "[J]udges who do not abide by those high and well recognized

standards of personal and judicial conduct to which they must be held cannot employ the argument of judicial independence as a shield when questionable practices on their part are challenged." *In re DeSaulnier*, 279 N.E.2d 296, 308 (Mass. 1972); *see Matter of Benoit*, 487 A.2d at 1173 (constitution not intended to give any judge judicial independence from internal disciplinary authority of state supreme court).

■ Nor does suspending the pay of a judge as a matter of internal discipline by this court violate the State constitutional provision providing for "permanent and honorable salaries . . . for the justices of the superior court." N.H. CONST. pt. II, art. 59. This provision "protects judges from being influenced by the legislature's power of the purse." *Matter of Benoit*, 487 A.2d at 1173. It does not limit this court's inherent judicial disciplinary power. *See id.* "The salary pertaining to an office is an incident to the office itself and not to the person discharging the duties of the office. Consistent with this proposition is the common law rule that the officer's right to compensation arises out of his performance of his duties." *Matter of Ferguson*, 403 S.E.2d at 630–31 (citations omitted). Therefore, a public officer who is suspended from office may not be entitled to compensation. *See* 63A AM. JUR. 2D *Public Officers and Employees* §§ 431, 432 (1984). Just as the suspension of judicial duties does not terminate a judicial office, the suspension of a judicial salary does not terminate the right to receive such salary when judicial privileges are restored.

We respectfully decline to answer your fifth question, whether enactment of the bill would violate any other provision of the New Hampshire Constitution, because of its generality. *See Opinion of the Justices (Weirs Beach)*, 134 N.H. 711, 717, 598 A.2d 864, 867-68 (1991).

DAVID A. BROCK

WILLIAM F. BATCHELDER

WILLIAM R. JOHNSON

W. STEPHEN THAYER, III

SHERMAN D. HORTON, JR.

October 18, 1995

*Jeffrey R. Howard*, attorney general (*Douglas N. Jones*, assistant attorney general, on the memorandum), filed a memorandum in support of negative answers to the questions presented.