Original
No. 98-536

PETITION OF MICHAEL MONE & a.

November 4, 1998

*Nixon, Raiche, Manning & Casinghino, P.A.*, of Manchester (*David L. Nixon* and *Leslie C. Nixon* on the brief, and *Mr. Nixon* orally), for the petitioners.

*Administrative Office of the Courts* filed no brief.

*Philip T. McLaughlin*, attorney general (*Daniel J. Mullen*, senior assistant attorney general, and *Ann F. Larney*, senior assistant attorney general, on the brief, and *Mr. Mullen* orally), as *amicus curiae*.

*Wadleigh, Starr & Peters*, of Manchester (*Eugene M. Van Loan, III* on the brief and orally), for the New Hampshire Sheriff's Association, as *amicus curiae*.

*Judy E. Reardon*, of Concord, by brief, for Governor Jeanne Shaheen, as *amicus curiae*.

*Betsy B. Miller* and *Loretta S. Platt*, of Concord, by brief, for Donna Sytek, Speaker of the House of Representatives; Joseph Delahunty, President of the Senate; and certain other members of the New Hampshire General Court, as *amici curiae*.

*Joseph S. Haas, Jr.*, of Ashland, by brief, *pro se*, as *amicus curiae*.

JOHNSON, J. The petitioners, fifty-one court security officers, filed a petition for a writ of prohibition, *see* RSA 490:4 (1997), requesting that we prevent the respondent, the administrative office

of the courts, from enforcing the provisions of Laws *1998*, chapter 297, mandating, *inter alia*, effective January 1, 1999, *see* Laws 1998, 297:12: (1) that county sheriff departments will be responsible for providing security in all State courts except the supreme court, *see* Laws 1998, 297:1-:7; and (2) that all judicial branch employee positions associated with the security function in those courts be abolished, *see* Laws 1998, 297:8. We hold that chapter 297 violates the Separation of Powers Clause of the New Hampshire Constitution, N.H. CONST. pt. I, art. 37. Accordingly, we hold that portions of chapter 297 are invalid insofar as it requires that all court security shall be provided by county sheriffs and their deputies.

Chapter 297 was enacted on June 26, 1998, and provides, in pertinent part:

297:1 Statement of Intent.

I. It is the intent of the legislature in adopting this act to provide for the protection of staff, members of the public, and officers of the court while conducting their affairs and business in the state's courts.

II. The legislature intends this act to be in accordance with part I, article 37 of the New Hampshire constitution, regarding separation of powers, to keep law enforcement functions and custody issues separate from the judicial functions of the court. The legislature intends to remain within its constitutional authority pursuant to part I, article 37 in requiring that the sheriff, through the sheriff's deputies and bailiffs, be responsible for courtroom security and the security and control of detained defendants during the time they are within the state's courts.

III. The legislature does not intend the provisions of this act to infringe upon the ability of the judiciary to establish rules governing the administration of all courts in the state and the practice and procedure which shall have the force and effect of law pursuant to part II, article 73-a of the New Hampshire. constitution. The legislature distinguishes the judiciary's authority over practice and procedure from the legislature's authority to designate the sheriff's duties of custody and control of detained defendants and courtroom security. The legislature believes that law enforcement and custody issues are an executive branch function and the conduct of trials is clearly the function and responsibility of the judiciary.

IV. By adopting this act, the legislature does not intend for sheriffs to provide security in the supreme court. It would not be outside the intent of the legislature for the judiciary to hire personnel to protect supreme court justices. The legislature also intends that the judiciary should have the power to influence the certification and training of bailiffs.

. . . .

297:3 Duties of Sheriff. RSA 104:5 is repealed and reenacted to read as follows:
104:5 Duties.

. . . .

III. The sheriff's bailiffs shall provide adequate security in all state courts, except the supreme court.

. . . .

297:5 Bailiffs. Amend RSA 594:1-a to read as follows:
594:1-a Bailiffs and Court Security Officers.

. . . .

II. The sheriff, through the sheriff's deputies and bailiffs, shall be responsible for court security and shall be responsible for the conduct and control of detained defendants and prisoners during the time period that such defendants and prisoners are in all state courts, except for the supreme court.

. . . .

297:8 Positions Abolished. Except for the court security officer positions at the supreme court, all judicial branch employee positions directly associated with courthouse security are hereby abolished.

Laws 1998, ch. 297 (bold italics omitted).

In response to the enactment of chapter 297, the petitioners sought a writ of prohibition to prevent the administrative office of the courts from implementing a plan to terminate their positions pursuant to Laws 1998, 297:8. We accepted the petition for briefing and argument and invited any *amicus curiae* to file briefs on the issue. The petitioners assert that chapter 297 violates the Separation of Powers Clause because it encroaches on the judiciary's ability to supervise its own personnel and perform its essential adjudicatory functions. Accordingly, the petitioners request that we find chapter 297 invalid.

We agree with the sheriff's association that a writ of prohibition is not historically the appropriate vehicle under our traditional

concepts of pleadings in which to bring this case. Prohibition is proper "to prevent a tribunal possessing judicial or quasi-judicial powers from exercising jurisdiction over matters not within its cognizance or exceeding its jurisdiction in matters of which it has cognizance." 63C AM. JUR. 2D *Prohibition* § 1, at 6 (1997). "Prohibition is an extraordinary remedy which, although within the discretion of this court, is used with caution and forbearance and only when the right to relief is clear." *State v. Superior Ct.*, 116 N.H. 1, 2, 350 A.2d 626, 627 (1976); *see Manchester Education Ass'n v. Superior Court*, 109 N.H. 513, 514, 257 A.2d 23, 24 (1969). The administrative office of the courts, although an administrative arm of this court, is not itself a court of law or equity, and, therefore, a writ of prohibition traditionally would not issue against it.

■■ It is well settled, however, that we will exercise our original jurisdiction, *see* RSA 490:4 (1997), in circumstances where the parties desire, and public need requires, a speedy determination of the important issues in controversy. *Monier v. Gallen*, 122 N.H. 474, 476, 446 A.2d 454, 455 (1982). This is one of those cases. "For more than half a century pleading and procedure in this jurisdiction has been a means to an end and it should never become more important than the purpose which it seeks to accomplish." *Levitt v. Maynard*, 104 N.H. 243, 244, 182 A.2d 897, 898 (1962) (quotation omitted); *see, e.g., State ex rel Regan v. Superior Court*, 102 N.H. 224, 226, 153 A.2d 403, 404 (1959). Accordingly, we treat this as a petition to exercise our unquestioned power to supervise the administrative office of the courts. *See* RSA 490:4, :26-b (1997). Such treatment is appropriate given the extreme circumstances of this case; namely, the need for expeditious resolution because the petitioners will otherwise be terminated on January 1, 1999, *see Nelson v. Morse*, 91 N.H. 177, 178, 16 A.2d 61, 62 (1940) (exercising original jurisdiction where delay would cause undue hardship); *cf. Petition of Chapman*, 128 N.H. 24, 26, 509 A.2d 753, 755 (1986), and the need to quickly resolve an important constitutional issue, *see Monier*, 122 N.H. at 475-76, 446 A.2d at 455 (exercise of original jurisdiction appropriate where interbranch dispute threatens political order). Regardless of the terminology employed, "parties are entitled under the established practice in this State to the most convenient procedure for the settlement of their controversy." *New Hampshire Retail Grocers Ass'n v. State Tax Comm'n*, 113 N.H. 511, 513, 309 A.2d 890, 891 (1973).

The sheriff's association argues that this case is not justiciable because the petitioners have invoked this court's original jurisdic-

tion and therefore there are no factual findings and no record to review. We reject that argument. The relevant facts are readily apparent from the face of the statute, and a facial attack on a statute is justiciable. *See Delude v. Town of Amherst*, 137 N.H. 361, 364, 628 A.2d 251, 254 (1993). The General Court has directed the judicial branch to terminate the court security officers, to be replaced by the county sheriffs, effective January 1, 1999. Court security will be provided as directed by the legislature, rather than by the judicial branch.

The sheriff's association further argues that because the respondent has not contested this petition, there is no adversity between the parties. Therefore, the court should not adjudicate this dispute. Chapter 297 provides absolutely no discretion for the court to retain any of the petitioners as court security officers. Pursuant to this directive, Donald Goodnow, the director of the administrative office of the courts, has informed the petitioners that their employment as court security officers will be terminated effective January 1, 1999. As such, the petitioners will suffer direct and immediate injuries as of January 1, 1999. This is sufficient to provide standing. *See Appeal of Campaign for Ratepayers Rights*, 142 N.H. 629, 632, 706 A.2d 675, 678 (1998). The *amicus* briefs filed by the sheriff's association, the Governor, and several members of the General Court effectively represented viewpoints adverse to the petitioners. Further, failure by the administrative office of the courts to defend the suit cannot deprive the petitioners of the right to a remedy. *Cf.* SUPER. CT. R. 14 (default judgment), 170·A(d) (default in arbitration).

The petitioners' loss of employment arises from an alleged violation of the Separation of Powers Clause, *see* N.H. CONST. pt. 1, art. 37. In particular, the petitioners will be deprived of their jobs if the statute is upheld. The sheriffs suggest that granting relief would require us to decide prematurely a separation of powers question. We disagree. The origins of the petitioners' employment derive from our responsibility for judicial branch operations. Therefore, the petitioners' continued employment depends upon our ability to employ security officers in the first instance. "It is the role of this court in our co-equal, tripartite form of government to interpret the Constitution and to resolve disputes arising under it. We would shirk our duty were we to decline to act in this case merely because our task is a difficult one." *Monier*, 122 N.H. at 476, 446 A.2d at 455; *see Merrill v. Sherburne*, 1 N.H. 199, 201-02 (1818).

Having determined that the subject matter of the petition is properly before us, we now consider whether chapter 297 violates the Separation of Powers Clause. "The separation of powers

134

between the legislative, executive and judicial branches of the government is an important part of [our] constitutional fabric." *Opinion of the Justices*, 102 N.H. 195, 196, 152 A.2d 878, 879 (1959); *see Merrill*, 1 N.H. at 210. Part I, Article 37 provides:

> In the government of this state, the three essential powers thereof, to wit, the legislative, executive, and judicial, ought to be kept as separate from, and independent of, each other, as the nature of a free government will admit, or as is consistent with that chain of connection that binds the whole fabric of the constitution in one indissoluble bond of union and amity.

Separation of the three co-equal branches of government is essential to protect against a seizure of control by one branch that would threaten the ability of our citizens to remain a free and sovereign people. *See State v. LaFrance*, 124 N.H. 171, 176, 471 A.2d 340, 342 (1983). Thus, each branch is prohibited by the Separation of Powers Clause from encroaching on the powers and functions of another branch. *Opinion of the Justices*, 116 N.H. 406, 413, 360 A.2d 116, 122 (1976). The drafters of Part I, Article 37 recognized, however, that a complete separation of powers would disrupt the efficient operation of government, *see Opinion of the Justices*, 121 N.H. 552, 556, 431 A.2d 783, 785-86 (1981), and thus, "[i]n the nature of things there must be some overlapping" of powers, *Opinion of the Justices*, 85 N.H. 562, 567, 154 A. 217, 223 (1931). "[P]art I, article 37 of the New Hampshire Constitution does not require the erection of impenetrable barriers between the branches of our government. On the contrary, the three departments must move in concert without improper encroachments by one branch upon the functions of another." *Opinion of the Justices*, 113 N.H. 287, 290, 306 A.2d 55, 57 (1973). The doctrine is thus violated when one branch usurps an essential power of another. *See Opinion of the Justices*, 121 N.H. at 556, 431 A.2d at 786; *Opinion of the Justices*, 110 N.H. 359, 363, 266 A.2d 823, 826 (1970). Accordingly, we must consider whether chapter 297 prevents the judiciary from performing an essential judicial function. *See Opinion of the Justices*, 86 N.H. 597, 601, 166 A. 640, 646 (1933) (legislative branch prohibited from seizing any of the judiciary's "essential attributes").

The petitioners assert that chapter 297 violates the Separation of Powers Clause because, by removing authority over court security officers from the courts, it encroaches on the judiciary's power to control courtroom functions. Although not specifically set forth in the constitution, powers reserved for the judiciary arise from its

most fundamental duty to interpret and administer the law. *See Merrill*, 1 N.H. at 203. Thus, it is beyond dispute that the judiciary has the power to control its courtrooms. *LaFrance*, 124 N.H. at 179, 471 A.2d at 344. "The power of the judiciary to control its own proceedings, the conduct of participants, the actions of officers of the court and the environment of the court is a power absolutely necessary for a court to function effectively and do its job of administering justice." *Id.* at 179-80; 471 A.2d at 344-45.

The sheriff's association recognizes that one branch of government violates the Separation of Powers Clause when it "manifestly and materially interferes with the capacity of another branch to do its job." The sheriff's association argues, however, that court security is not an essential attribute of the adjudicatory function of the court system because "[s]ecurity . . . is no more essential to the functioning of a Court than are a building, tables and chairs, utilities, [and] paper." We disagree.

An integral part of any court's duty to administer justice and fairly adjudicate disputes is to ensure that all parties have the opportunity to advance their cause in an atmosphere of safety, decorum, and fairness. *See State v. Hartzog*, 635 P.2d 694, 701 (Wash. 1981); *see also Kersevich v. Jaffrey Dist. Ct.*, 114 N.H. 790, 791, 330 A.2d 446, 447 (1974); *cf. Illinois v. Allen*, 397 U.S. 337, 343 (1970). Essential to that function are the court security officers who assist the courts in providing a safe and secure forum for litigants, court staff, witnesses, jurors, and the public. "Without security the public's confidence in the integrity of the judicial system is threatened. The proper administration of justice requires that courts operate in a safe and secure environment." *Bd. of Com'rs, Weld Co. v. 19th Jud. Dist.*, 895 P.2d 545, 548-49 (Colo. 1995). Thus, because the providers of court security play an integral role in the most fundamental function of any court, the adjudicatory function, it is an improper encroachment on the judiciary's power for the legislature to mandate the provider of court security. *See LaFrance*, 124 N.H. at 181, 471 A.2d at 346 (Separation of Powers Clause "compels limits to encroachments by one branch into the inherent and internal affairs of another branch").

The sheriff's association also asserts that because certain bailiffs in the superior courts are currently employed by the sheriffs, and not the courts, any argument that chapter 297 violates the Separation of Powers Clause is "meaningless." We find this argument to be without merit. Under the doctrine of comity, enactments that may encroach on an essential function of the judiciary may be applied where "they are consistent with judicial functions and policies and

when no constitutional challenge is made to them." *Opinion of the Justices (Prior Sexual Assault Evidence)*, 141 N.H. 562, 573-74, 688 A.2d 1006, 1013 (1997). As conceded by the sheriff's association in its brief, although there is substantial cooperation between the judicial branch and executive branch with respect to superior court security under the current system, the implicit understanding is that the presiding judge maintains control of the courtroom. "[T]here is a difference between assisting and intruding. If the coordinated activity of branches of government is voluntary and the activity of one branch does not intrude into the internal function of another," the Separation of Powers Clause is not violated. *Com. v. Tate*, 612 N.E.2d 686, 688 (Mass. App. Ct.), *review denied*, 616 N.E.2d 809 (Mass. 1993).

■ The legislature, in chapter 297, did not make any such accommodation, however. Instead, chapter 297 *requires* that the sheriffs be responsible for courtroom security. *See* Laws 1998, 297:1, II. Section 297:3, III provides that "[t]he sheriff's bailiffs *shall* provide adequate security in all state courts." (Emphasis added.) Section 297:5, II also provides that "[t]he sheriff, through the sheriff's deputies and bailiffs, *shall be responsible* for court security." (Emphasis added; bold italics omitted.) It is well-settled that the term "shall" in a statute "requires mandatory enforcement." *Town of Nottingham v. Harvey*, 120 N.H. 889, 895, 424 A.2d 1125, 1129 (1980). "It is fundamental that a trial court is vested with the discretion to provide for courtroom security in order to ensure the safety of court officers, parties, and the public." *Hartzog*, 635 P.2d at 701. Chapter 297 removes control of the essential function of court security from the judiciary and places the ultimate responsibility with the executive branch. Thus, chapter 297 directly interferes with the discretion of the courts to control their courtrooms and is constitutionally impermissible. *See Hartzog*, 635 P.2d at 701; *cf. Tate*, 612 N.E.2d at 688 (noting difference between assisting and intruding).

■ In addition, chapter 297 violates the Separation of Powers Clause because it encroaches on the judiciary's essential function to ensure the impartial administration of justice. Part I, Article 35 provides, in relevant part, that

> [i]t is essential to the preservation of the rights of every individual, his life, liberty, property, and character, that there be an impartial interpretation of the laws, and administration of justice. It is the right of every citizen to

be tried by judges as impartial as the lot of humanity will admit.

It is the court's responsibility "to oversee the operations of the judicial branch for the purposes of maintaining public confidence in the administration of justice." *Opinion of the Justices (Judicial Salary Suspension)*, 140 N.H. 297, 299, 666 A.2d 523, 525 (1995). Furthermore, Part I, Article 35 mandates that there be an independent judiciary so that the adjudication of individual controversies is fair and remains uninfluenced by outside forces. *See LaFrance*, 124 N.H. at 177-78, 471 A.2d at 343-44. In this instance, we are concerned about the effect that executive branch control of court security would have on the ability of the judicial branch to ensure impartiality in the adjudicatory process. For example, it is vital that bailiffs, who guard juries and relay their messages to the presiding judge, be under the direct supervision of the presiding judge to ensure the impartiality of the process. *Cf. State v. Wellman*, 128 N.H. 340, 348, 513 A.2d 944, 949 (1986) (provision for impartial judges extends to jury), *abrogated on other grounds by State v. Hughes*, 135 N.H. 413, 417-20, 605 A.2d 1062, 1065-67 (1992). If judges are unable to effectuate the Part I, Article 35 guarantee that every citizen will receive an impartial hearing both in theory and in practice, faith in the judicial system is diminished. *Cf. Opinion of the Justices (Judicial Salary Suspension)*, 140 N.H. at 299, 666 A.2d at 525. Accordingly, because chapter 297 mandates that the executive branch *shall* be responsible for security during the adjudicatory process, the law impedes on the court's constitutional responsibility to ensure the fair adjudication of controversies. *Cf. Opinion of the Justices (Prior Sexual Assault Evidence)*, 141 N.H. at 574, 688 A.2d at 1014 ("The protection of constitutional rights is a core function of the judiciary."); *In re Mussman*, 112 N.H. 99, 102-03, 289 A.2d 403, 405-06 (1972).

Chapter 297's statement of intent declares that "[t]he legislature believes that law enforcement and custody issues are an executive branch function and the conduct of trials is clearly the function and responsibility of the judiciary." Laws 1998, 297:1, III. We recognize that "[t]he separation of powers requirement in the Constitution is violated by an improper imposition upon one branch of constitutional duties belonging to another." *Opinion of the Justices*, 110 N.H. at 363, 266 A.2d at 826. Where executive functions are so closely related to an integral judicial function, however, the exercise of those powers by the judicial branch does not offend the doctrine of separation of powers. *See Opinions of the Justices to the Senate*,

363 N.E.2d 652, 659-60 (Mass. 1977); *LaChapelle v. United Shoe Machinery Corporation*, 61 N.E.2d 8, 10-11 (Mass. 1945). "[W]here the power is intimately connected with and incidental or auxiliary to the exercise of strictly judicial powers, or related to officers whose duties are closely connected with the judicial work of the court, it may constitutionally be exercised by the courts." *Opinion of the Justices*, 102 N.H. 195, 199, 152 A.2d 878, 881 (1959) (*Duncan*, J.) (quotations omitted); *cf. Opinion of the Justices*, 87 N.H. 492, 495, 179 A. 344, 346 (1935) (governmental functions must be viewed in the nature of its application). That the judicial branch has the ultimate authority to control court security is not offensive to Part I, Article 37 because security is an integral part of the essential adjudicatory function of the courts.

Accordingly, to the extent that chapter 297 removes responsibility and control of court security from the judicial branch, it invades the province of the judiciary to (1) control courtroom functions, and (2) ensure the fair adjudication of controversies, and is therefore unconstitutional. Any legislative attempt to control the hiring and supervision of court security in those areas of New Hampshire courthouses where trials or other adjudicatory functions of the court are undertaken, including, but not limited to, courtrooms, jury assembly rooms, deliberation rooms, the judges' chambers, and court staff facilities, is invalid under Part I, Article 37 of the New Hampshire Constitution.

Because "we are to presume that the legislature intended that the invalid part [of a statute] shall not produce entire invalidity if the valid part may be reasonably saved," *Carson v. Maurer*, 120 N.H. 925, 945, 424 A.2d 825, 839 (1980) (quotation omitted), we are hesitant to proclaim chapter 297 invalid in its entirety. For example, although the statute speaks in terms of "court security," *see* Laws 1998, 297:5, invalidation of the law with respect to those areas where the adjudicatory function takes place does not mean that the sheriffs may not be responsible for security in other areas of the courthouse and for the transport and custody of prisoners. *See* Laws 1998, 297:2, III(b). Furthermore, it is not clear to us that the legislature intended that invalidation of certain sections of this statute would render the changes in sheriffs' compensation null and void. *Compare* Laws 1998, 297:4, XII *with* RSA 104:31, XII (Supp. 1997). Because we conclude that the invalid provisions of chapter 297 are not "so integral and essential in the general structure of the act that they may not be rejected without the result of an entire collapse and destruction of the structure," *Carson*, 120 N.H. at 945,

424 A.2d at 839 (quotation omitted), we hold that chapter 297 is only invalid to the extent it is inconsistent with this opinion.

 In their *amici* brief, certain members of the New Hampshire General Court assert that chapter 297 is a constitutionally permissible exercise of their inherent funding power. *See* N.H. CONST. pt. II, art. 5. We disagree. The legislature may establish courts and designate their jurisdiction. *See* N.H. CONST. pt. II, art. 4; *Opinion of the Justices (Prior Sexual Assault Evidence)*, 141 N.H. at 573, 688 A.2d at 1013. The legislature has the power and the obligation to appropriate funds for the judicial branch. *See* N.H. CONST. pt. II, art. 5; RSA 9:4-a (Supp. 1997). This power, however, does not allow the legislature to intrude upon individual constitutional rights or upon the powers of co-equal branches of government. *See State v. Almy*, 67 N.H. 274, 279, 28 A. 372, 374-75 (1892); *Opinion of the Justices*, 86 N.H. at 601, 166 A. at 646. Within constitutional limits, the legislature may adjust appropriations to the judicial branch. *See Bd. of Com'rs, Weld Co. v. 19th Jud. Dist.*, 895 P.2d at 549. The legislature may not, however, direct the executive branch to perform a function that intrudes upon an essential function of the judicial branch. While cooperation between the branches is constitutionally permissible and may be prudent public policy, *see Tate*, 612 N.E.2d at 688, an intrusive legislative enactment requiring the same result is constitutionally impermissible.

We conclude by emphasizing that after many years of successful cooperation by all branches of government in the provision of court security

> duty has compelled us to act, and it hardly need be repeated, that we have attempted to divest ourselves of every feeling, except an earnest desire to perform what duty dictated. It must be admitted that courts ought to decide, according to the laws of the land, all cases, which are submitted to their examination. To do this, however, we must examine those laws. The constitution is one of them, and is in fact, and must be regarded by the judges as a fundamental law.

*Merrill*, 1 N.H. at 201 (quotations omitted). The constitution compels us to protect the essential functions of all three co-equal branches from improper encroachment. *See Opinion of the Justices*, 110 N.H. at 363-64, 266 A.2d at 826. Indeed, it would be our constitutional duty, for example, to invalidate an executive order by the Governor replacing the Sergeant-at-Arms and other security staff of the General Court with the county sheriff. Accordingly, for

the reasons set forth above, we order the administrative office of the courts to cease implementation of the offending provisions of chapter 297.

*So ordered.*

BROCK, C.J., THAYER and BRODERICK, JJ., did not sit; BOIS, J., retired, sat by special assignment under RSA 490:3; all concurred.